[Civ. No. 8788. Second Appellate District, Division One.—March 29, 1935.]

MEYER & HOLLER (a Corporation), Respondent, v. RAMONA VILLAGE (a Corporation) et al., Appellants.

Scott McReynolds for Appellants.

Loeb, Walker & Loeb and Herman F. Selvin for Respondent.

SHINN, J., *pro tem.*—Defendants appeal from a judgment rendered against Ramona Village, a corporation, and against defendants Callahan and Boos, as stockholders thereof, in an action to recover compensation for architectural services.

Plaintiff's employment was under a written contract in the form of a proposal made to and accepted by defendant corporation. The provisions of the contract upon which the judgment was founded and which are material on this appeal are as follows: "We will prepare preliminary plans for said building and submit them to you for your approval and upon your approval thereof we will proceed with the plans to a point where we shall be enabled to estimate the cost of the work and will submit to you a guaranteed maximum price for which we will construct the building. The guaranteed maximum price is to be based on the estimated

net cost, including labor, materials, drafting, engineering, estimating and blue printing costs of producing the building from said plans plus a compensation of fifteen per cent (15%). . . . Should the erection of the building for any reason be postponed or abandoned before you have authorized us in writing to proceed with the preparation of working drawings in order to prepare for actual construction of the building you are to pay to us at the time of such postponement or abandonment one and one-half (1½) times the actual amount expended by us in connection with the preparation of your preliminary plans and estimates to reimburse us in full for the cost of same without any percentage charge as a fee for our services. Should postponement or abandonment occur after such authorization, or should you at any time desire to sever relations with us, you are to pay us one and one-half (1½) times the actual amount expended by us in connection with the preparation of the preliminary plans, working drawings and estimates, and in addition a sum equal to three per cent (3%) of our guaranteed maximum price as a fee for our services.''

■ The erection of the building was abandoned and plaintiff never was instructed to prepare working drawings in order to prepare for actual construction. Plaintiff brought this action to recover upon the basis of one and one-half times the amount expended by it in the work it had done in preparing preliminary plans and estimates up to the time of abandonment. It was not denied that plaintiff did prepare preliminary plans for the building and that the same were approved by defendant corporation. The position taken by defendants at the time of trial was that these plans were the only ones they were bound to pay for, while it was contended by plaintiff that the work done was necessary to enable it to estimate the cost of the work and submit a guaranteed maximum price for which it would contract to construct the building. This question of fact was resolved in favor of plaintiff, the court finding ''that plaintiff did no more work or expend more money than was reasonably necessary to carry said preliminary plans to a point where said estimate could be made and said guaranteed maximum price submitted. The court further finds, in this connection, that by the term 'preliminary plans and estimates' as said

term was used in the written agreement, Plaintiff's Exhibit 1, the parties to said agreement referred and intended to refer to the preliminary plans carried and developed to such a point as to enable plaintiff to make an actual, detailed estimate of the cost of said proposed building and to submit a bid or guaranteed maximum price for the construction thereof.''

These findings find support in the testimony of numerous qualified architects to the effect that while the plans were as much as sixty per cent completed, they were not sufficient to constitute working drawings and did not go beyond the point necessary to determine the cost with sufficient accuracy to justify a bid for the construction. While there was testimony the other way which created a conflict, the findings of the court are not only supported by the evidence, but strongly so. We do not see how the court could have reached a contrary construction of the agreement, for in order to do so it would have been necessary to find that plaintiff undertook to make a binding offer to construct the building for a stated price, based upon the preliminary plans, from which neither of the parties could know with certainty what manner of construction would be employed. Had such been the intention the contract would not have provided for additional work to be done on the plans, after their approval, before an estimate of cost would be made. A point is made of the fact that the complaint sought recovery only for work done on preliminary plans and estimates, whereas plaintiff was allowed to recover for the cost of preparing working drawings, but this argument is based upon the same erroneous construction of the contract and is answered by the findings we have referred to, which are conclusive on the point.

The court found that defendants Boos and Callahan were the joint owners of 4,000 out of 4,009 shares of subscribed and outstanding stock of the corporation and gave judgment against them jointly for that proportion of the amount of plaintiff's claim. These defendants advance several reasons why they should not have been held to that or any other liability. One argument is that they were not stockholders at all at the time the debt was created, because, as they claim, no stock was ever issued to them and they never became entitled to receive any. While it is true that no

certificate was issued, that fact is immaterial if, as we think was the case, they had paid for the stock and had a right to receive it on demand. These defendants held a lease upon certain real property upon which it was proposed to construct the building in question and they also owned the stage rights of a certain book. These they offered in writing to transfer to the corporation, which they had caused to be organized, in return for 2,000 shares of preferred and 2,000 shares of common stock. This offer was duly accepted by the corporation and a permit was obtained authorizing the issuance of the stock to them for the consideration stated. Certain conditions were imposed by the Commissioner of Corporations which must be met before any stock could be issued. The ones which require consideration were that Boos and Callahan should make certain waivers as to dividends and in the event of dissolution, that the by-laws should be amended and that the property in question should be transferred to the corporation. The waivers were executed and delivered, the by-laws were amended by vote of the board of directors and the transfers were made by Boos and Callahan.

It is now claimed that no authority was shown in the directors to amend the by-laws and it is further claimed that the transfer of the lease by Boos and Callahan was insufficient because it attempted to transfer an interest in community real property and their wives did not join therein. Assuming these facts to be true, appellants say that there was a failure to comply with the terms of the permit and that any stock sold or issued would have been void and would have carried no stockholders' liability.

The by-laws were not offered in evidence and the record is silent as to the authority of the directors to amend them. Minutes of a meeting of the directors were placed in evidence, from which it appeared that a resolution was duly adopted, both Boos and Callahan voting in favor thereof, amending the by-laws in the particulars required by the permit. No objection was made to the introduction of this evidence. The amendment was certified to the Commissioner of Corporations and, so far as the record discloses, was treated as sufficient. The directors who passed the resolution were the owners of all but three shares of the subscribed stock; it is not questioned that they acted in good faith, in

a *bona fide* attempt to amend the by-laws and understood that their attempt was successful. Callahan was president of the corporation and Boos was a director. It was their duty to see that the proceedings were regular and sufficient. It ill becomes them now to plead their own negligence. Upon the record before us and especially in view of the failure of defendants to object to the foundation laid for the introduction of the minutes of the directors' meeting, we have no hesitation in holding that the evidence that the by-laws were amended in conformity with the requirements of the permit, is sufficient for all the purposes of the case.

██ The next point requiring decision is that the transfer of the lease was ineffectual without the signatures of the wives of the assignors. The argument is made that the lease was an interest in community real property as to which the husbands were unable to convey good title unless their wives joined in the instrument of conveyance. We think it is unnecessary to decide this question and are not disposed to do so. If we should agree with the claim of appellants that the consent of the wives was necessary, we should have to decide the point urged for reversal against them because, for reasons which we think are obvious, they cannot be heard to urge this objection. Their position is that they rendered to the corporation a title that was defective; that they accepted it on behalf of the corporation as the consideration paid for their stock and in compliance with the terms of the permit and that they now desire to depend upon its invalidity and insufficiency to escape liability as stockholders. The defense does not appeal to us as having substantial merit. ██ If the transfer required the signatures of their wives, the defendants are presumed to have known it and it was their duty to obtain them; if that could not be done, they should not, as directors of the corporation, have accepted the transfer, nor should they have permitted the other directors to do so. They rest their defense upon the proposition that they failed, both in making the transfer and in accepting it for the corporation, to comply with the terms of the permit, knowing that the corporation was relying upon the sufficiency of the conveyance. Had they done what they now claim they should have done the sufficiency of the assignment would not be in question. The situation calls for the application of the rule, that having remained silent when

they should have spoken, they cannot now be heard to speak when they should remain silent. ■ The Corporate Securities Act is a protective measure, but it is not designed for the protection of those who violate it. One who participates in a violation of the act, and by means thereof acquires corporate stock, cannot establish the void character of his stock by proving the unlawful act. (*Domenigoni* v. *Imperial Live Stock etc. Co.*, 189 Cal. 467 [209 Pac. 36].)

A case quite in point is *Stewart* v. *Engelberg*, 207 Cal. 595 [279 Pac. 661]. Upon facts not distinguishable from those in the present case, it was held that stock given in exchange for property passed upon payment of the purchase price and compliance with the terms of the permit of the Commissioner of Corporations, and that it was immaterial that the certificate had not been issued. It was there said, and the quotation is applicable here: "From the above recital of facts it seems too clear for controversy that 254 shares of stock were on and after June 4, 1925, the date of filing of the first waiver, in the category of subscribed capital stock owned by said Harry Klarman. Every condition of the permit had been complied with. The stock had been fully paid for; only the formal issuance of the certificate remained to be done, but this was not required to bind him. The whole scheme and plan was that of Klarman and his brother and it would be an undue submission to form and a disregard of substance to hold otherwise than that Harry Klarman was the chief stockholder at the time the contract with plaintiff was entered into."

■ The next point requiring discussion is that Boos and Callahan were held to a joint liability for the entire debt going with the ownership of 4,000 shares of stock, instead of a several liability for one-half of the amount. It is contended that each is presumptively the owner, in any event, of not more than 2,000 shares and that his liability is limited accordingly. It is claimed also that the evidence is insufficient to show a joint ownership of the stock but we think it is immaterial whether they owned it jointly or in common or in what proportions they owned it. That question does not concern the creditor. They acted jointly in their contracts with the corporation. Their interests were not segregated. They were entitled to a certificate in their joint names. The liability attached to the ownership of the whole

and was imposed upon each of them. Such a liability is presumed to be joint and not several. (Civ. Code, sec. 1431.) The court found their ownership to be joint and it is argued that in such a case the ownership is in equal shares. (Civ. Code, sec. 683.) But section 1431 and not 683 controls as between the parties to the obligation. (*Denigan* v. *San Francisco Sav. Union,* 127 Cal. 142 [59 Pac. 390, 78 Am. St. Rep. 35].) The judgment was, therefore, not excessive.

The same defendants claims to have been released from their stockholders' liability by the repeal of article XII, section 3, of the Constitution and sections 322 and 322a of the Civil Code, by which the liability of stockholders was imposed. It is pointed out that when section 322 was repealed the repealing act contained a saving clause which rendered the repeal inapplicable to causes of action then existing. This provision is claimed to be ineffectual because of what is argued to be a defective title of the repealing act. We cannot agree with the argument presented on this point, but regardless of the effect of the saving clause in the act repealing section 322, creditors' rights against stockholders were preserved by section 404 of the Civil Code (now section 280), which operated generally to save existing causes of action from the operation of repealing and amending statutes. Furthermore, the question of continuing liability was settled in favor of creditors by the decision of *Coombs* v. *Getz,* 285 U. S. 434 [52 Sup. Ct. 435, 76 L. Ed. 866].

We find no error in the record and the judgment is therefore affirmed.

Houser, Acting P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 27, 1935, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 27, 1935.