[Civ. Nos. 26091, 26092. Second Dist., Div. Four. Nov. 21, 1962.]

CRESTLAWN MEMORIAL PARK ASSOCIATION et al., Plaintiffs and Appellants, v. JOHN G. SOBIESKI, as Commissioner of Corporations, et al., Defendants and Respondents.

R. D. Sweeney and Cameron W. Cecil for Plaintiffs and Appellants.

Stanley Mosk, Attorney General, and Bonnie Lee Martin, Deputy Attorney General, Sidney Knable, Hill, Farrer & Burrill and William S. Scully for Defendants and Respondents.

BURKE, P. J.—Appeals in two separate proceedings for writs of mandate were consolidated by stipulation of counsel who agreed that a single opinion might be written covering both appeals. Although relating essentially to the same subject matter and the same controversy they are not dependent upon

the determination of an equity action considered concurrently therewith. (*Sheppard,* et al., plaintiffs and respondents, v. *Ray A. Wilcox, et al.,* defendants and appellants, *\*post,* p. 53 [26 Cal.Rptr. 412].) Since the latter case in an action to declare a constructive trust it will be referred to herein as the ''equity case.'' Reference is made to the decision in that case for details as to the background of this litigation in order to avoid a needless repetition thereof in this decision.

These proceedings seeking peremptory writs of mandate were brought to set aside two decisions of the Commissioner of Corporations by which the latter determined that a permit to issue stock previously issued by him on December 18, 1957 (''1957 permit''), should be amended. These determinations were made after a substantial portion of the stock, which was the subject matter of the permit, had been sold and issued pursuant to the permit. In this decision we will refer to defendant John G. Sobieski as ''commissioner'' and to the remaining defendants who are the real parties in interest as ''defendants.'' The latter were the ''accusers'' before the commissioner.

Details with respect to the issuance of the 1957 permit and with respect to the first permit given the corporation to issue stock dated November 10, 1952, are set forth in the equity case.

On January 6, 1958, an accusation was filed by defendants protesting the issuance of the 1957 permit. On January 7, 1958, the 1957 permit was summarily suspended by the commissioner and notice of hearing given. On December 18, 1958, the authority to issue stock under the 1957 permit expired by its terms. On August 11, 1959, a proposed decision was adopted by the commissioner determining that the 1957 permit should be amended to provide for a prior offering to the holders of common shares to purchase the number of the new common issue proportionate to the number of shares of old common stock then held by them and extending the permit so as to expire six months from the date of the amendment. On August 14, 1959, pursuant to the latter decision, a permit was issued amending the 1957 permit to add the prior offering condition applicable to all stockholders of record on December 6, 1957. (The authority to sell securities under this permit expired by its terms on February 15, 1960, and no stock was ever sold or issued pursuant to it.)

On October 8, 1959, the first mandate action was filed by

---

*\*Post,* p. 53, 2d Civil No. 26099, decided by this court this day.

plaintiffs attacking the validity of the commissioner's decision of August 11, 1959.

On September 3, 1959, defendants filed a petition for reconsideration to correct certain omissions in the August 11, 1959, decision. On September 11, 1959, the commissioner filed an order for reconsideration and set the matter down for hearing, indicating that the hearing would be predicated upon the matters set forth in the petition for reconsideration. A rehearing was then held by Deputy Commissioner Harshbarger on September 22, 1959. This commissioner subsequently retired without filing a proposed decision.

On February 29, 1960, an amended proposed decision, and order adopting same, resulting from the rehearing of September 22, 1959, was filed by Deputy Commissioner Winton and adopted by the commissioner. That decision set aside the amended permit of August 14, 1959. In this decision and order the commissioner determined that by virtue of the purchase of 8,400 common shares pursuant to the 1957 permit the plaintiffs, except Crestlawn, together with the persons associated with and controlled by them, increased their percentage holdings of common voting power in Crestlawn from 42.3 per cent to 81.5 per cent and reduced the holdings of voting power of defendants from 57.6 per cent to 18.8 per cent. Reference is made to the opinion in the equity case for a discussion of the findings of the commissioner upon which the decision is based. The proposed decision and order declared that the 1957 permit be amended to provide that Crestlawn be permitted to sell and issue to all of its common shareholders of record as of December 6, 1957, an aggregate of not to exceed 10,000 of its common shares in the proportion that the number of common shares held by each shareholder bears to the whole number of common shares issued and outstanding as of that date. The price was set at $5.00 per share to be paid either in cash or in return for cancellation of indebtedness.

On April 27, 1960, the second mandate action was filed by plaintiffs, this time attacking the validity of the February 29, 1960 decision of the commissioner.

The trial judge determined in the first writ of mandate proceeding that since the order and decision complained of had been vacated by the commissioner, who also issued a substitute decision, the issue presented was moot. This was a correct determination and properly disposed of that proceeding.

The second writ of mandate was denied.

 Plaintiffs assert that the procedure adopted by the commissioner is contrary to law and violates due process. They revert to the conditions of the original stock permit issued in 1952 and referred to in the decision in the equity case recognizing a clear distinction between the holders of promotional shares and the holders of investment shares. They argue that when the commissioner issued his 1957 permit it was merely a continuation of the recognition of the distinction between the two classes of shares and that the discrimination set forth in the 1957 permit against the holders of the promotional shares was entirely justified. Therefore, they argue, the 1957 permit is valid.

Plaintiffs, however, wholly ignore the fact that both the commissioner and the court found that the 1957 permit was issued as a result of plaintiffs' nondisclosures and would not have been issued had the commissioner been placed in possession of the true facts as to the motives and intentions of plaintiffs and the group of stockholders associated with them.

Plaintiffs assert that the commissioner may not issue a decision and an amended permit which will adversely affect the rights of stockholders who had already purchased stock under a permit prior to its amendment. The commissioner, on the other hand, contends that he may amend a permit at any time for the general welfare of the public or for the protection of security holders pursuant to the express authority of Corporations Code sections 25513 and 25316. He points out that his decision did not purport to determine the rights of individual shareholders nor the rights of shareholders in the corporation; that the rights of shareholders who knowingly participate in a conspiracy may be different from those of innocent shareholders and should be determined in an independent action where specific remedies are sought. The authority to issue stock under the amended decision was permissive only and did not purport to direct the corporation to reacquire its stock.

 Plaintiffs contend that the commissioner has no power to hold a hearing based on an ''accusation'' to modify or change a permit and that the sole remedy of anyone aggrieved by the permit is to apply to the superior court within sixty days after its issuance under procedure set out in Corporations Code section 25318. On the contrary, the language of this section is merely permissive and the law is clear that the commissioner may hold a hearing either on an accusation or on his own motion to modify or amend a permit. (See Corp. Code, §§ 25513, 25316, 25350 and 25352.) Similarly, plaintiffs' contention that since no proce-

dures are provided for a rehearing the commissioner may not grant one, or having granted a limited rehearing may not vacate his decision entirely without giving the parties notice or an opportunity to be heard, are without foundation and contrary to the broad regulatory powers given the commissioner. The commissioner may grant a rehearing under the same general power and continuing jurisdiction which authorizes him to hold an original hearing. In their attack upon the regularity of the hearings of the commissioner and a purported lack of "due process," plaintiffs refer to requirements of the State Administrative Procedure Act governing hearings by the various state boards and commissions required to conduct proceedings under the act. To answer these various contentions is unnecessary since the provisions of such act do not govern or apply to proceedings of the type under review here. Suffice it to say that the commissioner afforded the plaintiffs every opportunity to be heard and the fact that he conducted conferences or inquiries in the form of "hearings" in an effort to be entirely fair to both sides may not be used as a weapon to attack the proceedings as not complying with the requirements of an act which is clearly inapplicable[1] or as not conforming to the formalities of a judicial proceeding.

 Plaintiffs contend that since the permit under attack provides that stock could be issued to stockholders of record as of December 6, 1957, persons who were not stockholders of record on that date had no standing to complain. The commissioner points out that the permit is issued to the corporation, that the accusers are merely complaining witnesses, and that no "standing" is required to lodge a complaint with the commissioner since the commissioner may take cognizance of such matters on his own motion. (Corp. Code, § 25316; cf. *Sale* v. *Railroad Com.*, 15 Cal.2d 612, 617-618 [104 P.2d 38]; *Tapley* v. *State Bar*, 8 Cal.2d 167, 172-173 [64 P.2d 404].)

Plaintiffs cite *Transportation Bldg. Co.* v. *Daugherty*, 74 Cal.App.2d 604, 615 [169 P.2d 470], as sustaining their view that having once found on the facts before him that a plan is

[1]Government Code section 11501 provides that the procedure of any agency shall be conducted pursuant to the provisions of this chapter only as to those functions to which the chapter is made applicable by the statutes relating to the particular agency.

Corporations Code section 25710 provides for conducting proceedings for the suspension or revocation of a broker's or agent's certificate or concerning an order to cease and desist from the sale of securities under Corporations Code section 25707. No similar reference is made with reference to proceedings for the suspension, revocation, or amendment of a permit to sell securities.

fair, just and equitable the commissioner is foreclosed from reinquiring into his determination in the light of after-discovered facts which if known to him at the time would have materially affected his action. In that case, however, the petitioners sought to compel the commissioner to issue his permit authorizing a corporation to change its capital structure wherein the commissioner refused the permit not upon the grounds that the plan was unfair, unjust, inequitable or fraudulent, but because he felt that the stockholders could work out a better plan. The commissioner not having found that the plan was unfair, unjust or inequitable, the court held it was his duty to issue the permit. From the holding of this case plaintiffs argue that the commissioner once having issued the permit has no legal power to change it or to correct any errors or to redress any wrongs which were caused or were inherent in the issuance of the permit. Clearly, the case does not support this contention and there is nothing therein which would in any way modify the clear authority vested in the commissioner by section 25513 of the Corporations Code to amend, alter or revoke any permit issued by him or temporarily suspend the rights of the holder under the permit and whenever he deems it necessary for the general welfare of the public or for the protection of security holders. These powers continue whether or not any permit or order has been suspended, revoked or consummated.

Plaintiffs contend that the decision of the commissioner could not be carried into effect without the corporation reacquiring about 3,500 shares of the stock issued under the 1957 permit so that it would then have sufficient stock to issue pro rata to the holders of stock issued under the 1952 permit. They further contend that the commissioner doesn't have the power to require persons who have bought stock under a permit to transfer that stock to other stockholders. A reading of the decision of the commissioner disposes of these contentions since at no time did he purport to order the corporation to reacquire its stock nor require any stockholders to transfer their stock. The effect of the commissioner's decision is simply to amend the 1957 permit.

Plaintiffs point out that each of the shareholders who purchased stock under the 1957 permit, who were called as witnesses, testified they would not have invested any more money in the corporation if the promotional shares would have been entitled to buy five shares of the new stock for each one share of the promotional stock held by the persons holding the promotional stock. Here, it must be pointed out, however,

that the commissioner's decision did not purport to determine the rights, liabilities and defenses of those selling or buying shares and such issues were not properly before the trial court in the mandate proceedings.

Furthermore, insofar as plaintiffs are concerned, in view of the findings of both the commissioner and the court, they cannot be held to be innocent purchasers and are in no position to complain in view of the breach of trust found to have been perpetrated by their representatives. The provisions of the Corporate Securities Act are for the benefit of the public and to safeguard the purchasers against the perpetration of fraud. It is not designed for the protection of those who violate it. (*Meyer & Holler* v. *Ramona Village,* 5 Cal.App. 2d 679, 686 [43 P.2d 823, 44 P.2d 634].)

The court determined that plaintiffs participated in a conspiracy and that each of them sought the aid of the court with unclean hands in that they were unjust, unfair and inequitable in their acts and dealings. A proceeding for a writ of mandate is an equitable proceeding in which the trial court is vested with a wide discretion and the doctrine of ''unclean hands'' is therefore applicable. (*Allen* v. *Los Angeles County District Council of Carpenters,* 51 Cal.2d 805, 811 812 [337 P.2d 457].)

Plaintiffs complain that ten shareholders holding 5,875 outstanding shares of stock were not given notice of the hearing and that their rights are affected by the amended decision of the commissioner. These shareholders are not parties to these lawsuits, and plaintiffs have no standing to complain that someone else's property rights are jeopardized. The granting of a writ of mandate is discretionary and will be granted only when it is shown that the petitioner has a beneficial interest. (See *Parker* v. *Bowron,* 40 Cal.2d 344 [254 P.2d 6].) It should be noted again, however, that the commissioner did not make a determination that the shares issued pursuant to the 1957 permit were void. There is no requirement in the law that the commissioner give notice to all those who might have purchased stock before he exercised his discretionary power to suspend the permit or to amend it. Such a requirement would defeat the very purposes of the Legislature in giving the commissioner continuing power to act expeditiously in these matters upon his own motion. Even though the commissioner was not required under the law to hold hearings or take sworn testimony under the Corporations Code sections heretofore mentioned, nevertheless the record indicates that he did hold hearings on notice and re-

ceived sworn testimony, extended the right of cross-examination and published detailed findings of fact and conclusions stating in writing not only his decision but the basis therefor.

This being a ''privilege'' or permit case, the scope of judical review of the orders of the commissioner is limited to determining whether there was any substantial evidence to support the administrative decision. *(Drummey* v. *Board of Funeral Directors & Embalmers,* 13 Cal.2d 75 [87 P.2d 848]; *Standard Oil Co.* v. *State Board of Equalization,* 6 Cal.2d 557 [59 P.2d 119].) Where the subject matter determined by statewide statutory administrative agencies involves matters of privilege rather than vested rights, constitutional considerations do not require the court to exercise an independent judgment, but merely to determine that the agency had reasonable ground for its decision and that its action did not constitute an abuse of its discretion. *(McDonough* v. *Goodcell,* 13 Cal.2d 741 [91 P.2d 1035, 123 A.L.R. 1205].) That there was substantial evidence in the cases at bar to sustain the actions of the commissioner there can be no doubt.

The orders denying the peremptory writs of mandate are affirmed.

Jefferson, J., and Ford, J.,* concurred.

A petition for a rehearing was denied December 19, 1962, and appellants' petition for a hearing by the Supreme Court was denied January 16, 1963.

---

*Assigned by Chairman of Judicial Council.