[Civ. No. 30118. Second Dist., Div. Three. Feb. 15, 1966.]

GIANNINI CONTROLS CORPORATION et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; JERALD S. SCHUTZBANK, as Commissioner of Corporations, etc., Real Party in Interest.

O'Melveny & Myers, James M. Irvine, Jr., William W. Vaughn and C. Douglas Kranwinkle for Petitioners.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, and Arthur C. de Goede, Deputy Attorney General, for Real Party in Interest.

John G. Sobieski, Gibson, Dunn & Crutcher, F. Lee Coulter, Jr., and James E. Beardsley as Amici Curiae on behalf of Real Party in Interest.

FRAMPTON, J. pro tem.*—Mandate to compel the respondent court to file a supplemental petition to review an administrative decision.

Giannini Controls Corporation is a corporation organized and existing under the laws of the State of New York. Datex Corporation is a corporation organized and existing under the laws of the State of California. Jerald S. Schutzbank is the Commissioner of Corporations of the State of California, having succeeded Charles E. Rickershauser, Jr., on December 13, 1965. Reference hereinafter to "the Commissioner" will be intended as a reference to Mr. Rickershauser at all times prior to December 13, 1965, and to Mr. Schutzbank at all times thereafter.

Datex has outstanding 50,000 shares of capital stock of which 40,000 shares are owned and held of record by Giannini and 10,000 shares are owned and held of record by Carl P. Spaulding. All of said outstanding shares of capital stock are of the same class.

On or about November 6, 1964, the Commissioner, pursuant to an application filed by Giannini, issued a negotiating permit authorizing Giannini to negotiate with Datex and its officers, directors and shareholders (a) to acquire the shares of Datex owned by Spaulding, (b) to acquire the assets of Datex, or (c) to enter into an agreement calling for a statutory merger of Datex into Giannini. On or about November 17, 1964, and in accordance with the negotiating permit, Giannini and Datex, with the prior approval and authority of their respective boards of directors, entered into a written Plan and Agreement of Merger (hereinafter referred to as "the merger agreement") whereby it was agreed, subject to the approval of the stockholders of the two corporations, that Datex would be merged into Giannini and that as a result of said merger Giannini's stock in Datex would be cancelled

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

and Spaulding would be entitled to receive 1.8 shares of Giannini's common stock in exchange for each of his shares in Datex.

On or about November 19, 1964, Giannini filed an application with the Commissioner for a permit to sell and issue to Spaulding, pursuant to the merger agreement, not to exceed 18,000 shares of its common stock. On or about December 11, 1964, Spaulding filed with the Commissioner an objection to said application wherein it was alleged, among other things, that the proposed exchange of Giannini common stock for Spaulding's Datex common stock as agreed upon in the merger agreement was not fair, just and equitable to Spaulding.

On December 21, 1964, the stockholders of Datex met to consider approval of the merger agreement. At that meeting the merger agreement and the merger therein agreed upon were approved and adopted by the affirmative vote of Giannini as the holder of 40,000 of Datex's 50,000 shares. This vote was sufficient for the approval of the merger agreement under section 4107[1] of the Corporations Code and the articles of incorporation of Datex. Spaulding voted his 10,000 shares in opposition to the merger agreement. On or about December 23, 1964, Datex, acting pursuant to section 4109[2] of the Cor-

[1]''The agreement shall be approved by the vote or written consent of the holders of not less than two-thirds of the issued and outstanding shares of each class, regardless of limitations or restrictions on the voting power thereof, of each corporation, entitled to vote at a meeting duly called upon notice of the time, place, and purpose thereof, duly given to each shareholder at least 20 days prior to the date of the meeting, except that notice of the time, place and purpose of any such meeting may be waived as provided in Section 2209. Unless the notice be waived, there shall be mailed with the notice of the meeting a statement of the general terms of the proposed agreement. Different series of the same class of shares shall not constitute different classes of shares for the purpose of voting by classes. Any holder of shares entitled to vote at the meeting may vote part of the shares to approve the agreement of merger or consolidation and refrain from voting the remaining shares in favor of the agreement, but if he fails to specify the number of shares he is voting to approve the agreement, it will be conclusively presumed that his approving vote is with respect to all shares which he is entitled to vote.

''The articles of incorporation may require the vote of the holders of any greater percentage or fraction of the outstanding shares of any one or more classes for the approval of any merger or consolidation than would otherwise be required under this article, but in no case may the articles prohibit any merger or consolidation authorized by this chapter.''

[2]''When the agreement has been approved by the directors and the shareholders of a corporation, the corporation shall mail notice of the approval to each of its shareholders.''

porations Code, gave written notice to each of its shareholders, including Spaulding, of the approval of the merger agreement by the board of directors of Datex and the holders of more than two-thirds of the outstanding stock of Datex. On or about January 15, 1965, Spaulding, acting pursuant to section 4301[3] of the Corporations Code, elected to and did demand of Datex in writing that Datex purchase his 10,000 shares of Datex stock and pay him their fair market value, and at the same time, presented to Datex at its principal office the certificate representing his 10,000 shares of Datex stock, which certificate was thereupon duly stamped and endorsed with a statement that the shares represented thereby are dissenting shares, pursuant to the provisions of section 4302[4] of the Corporations Code. By reason of the foregoing the 10,000 shares of Datex stock held by Spaulding became dissenting shares within the meaning of sections 4300 through 4318 of the Corporations Code, and Spaulding is entitled to receive therefor an amount in cash equivalent to the fair market value of the shares as of December 20, 1964, in lieu of the 18,000 shares of Giannini's stock which he would otherwise be entitled to receive under the merger agreement.

On or about January 20, 1965, Datex advised Spaulding by letter that in the opinion of Datex, Spaulding's 10,000 shares of Datex stock had a fair market value of $294,750 as of December 20, 1964, the day before the merger agreement was approved by the Datex stockholders (Corp.Code, § 4301, fn.

[3]"Any such shareholder who desires the corporation to purchase his dissenting shares shall make written demand upon the corporation for the purchase of his shares, and payment to him of their fair market value.

"The demand shall state the number and class of the shares held of record by the shareholder which he demands that the corporation purchase, and shall contain a request that the corporation state what it claims to be the fair market value of those shares as of the day before the vote of the shareholders approving the merger or consolidation.

"The demand is not effective for any purpose unless it is received by the corporation or any transfer agent thereof within 30 days after the date on which the notice of the approval by the shareholders was mailed to the shareholder."

[4]"Within 30 days after the date on which notice of the approval by the shareholders was mailed to the shareholder, he shall submit to the corporation at its principal office or at the office of any transfer agent thereof his certificates representing any dissenting shares which he demands that the corporation purchase, to be stamped or endorsed with a statement that the shares are dissenting shares, or to be exchanged for certificates of appropriate denominations to be so stamped or endorsed. Upon subsequent transfers of the dissenting shares on the books of the corporation the new certificates issued therefor shall bear a like statement, together with the name of the original dissenting holder of the shares."

3, *ante*), and also offered to purchase the shares for the sum of $312,750. This offer was not accepted by Spaulding.

On or about January 21, 1965, Giannini and Datex requested the Commissioner to issue his certificate, as provided by section 4119[5] of the Corporations Code, to the effect that in his opinion no permit is required under the provisions of the Corporate Securities Law for the consummation of the merger of Datex into Giannini. The request was based upon the ground that Spaulding was the only party to whom shares of Giannini stock were to have been issued pursuant to the merger agreement, that he had elected to exercise the rights of a dissenting stockholder under the provisions of the Corporations Code and thus to receive cash payment of the fair market value of his Datex shares in lieu of receiving shares of Giannini, and that accordingly, no securities would be issued in consummation of the merger, and no permit for the issuance of securities would be required. The Commissioner did not issue the certificate as requested nor did he

---

[5] "If the consolidated or surviving corporation be a domestic corporation, the agreement and certificate of such corporation as well as the certificate of each constituent domestic corporation shall be filed in the office of the Secretary of State and thereupon the consolidation or merger shall be effective as to any such domestic corporation. Neither the agreement nor any certificate shall be filed, however, until there has been filed with the Secretary of State a certificate executed by the Commissioner of Corporations to the effect that a permit has been issued or that in his opinion no permit is required under the provisions of the Corporate Securities Law. Each constituent foreign corporation which is qualified for the transaction of intrastate business in this State shall file in the office of the Secretary of State a certificate of surrender of right to transact intrastate business as provided for by Section 6700.

"If the consolidated or surviving corporation be a foreign corporation, each constituent consolidated or merged foreign corporation which is qualified for the transaction of intrastate business in this State shall file in the office of the Secretary of State a certificate of surrender of its right to transact intrastate business as provided for by Section 6700. No filing need be made in this State by or on behalf of the surviving foreign corporation even though it be qualified for the transaction of intrastate business. Each constituent domestic corporation shall file in the office of the Secretary of State a copy of the agreement, certificate or other document filed by the consolidated or surviving foreign corporation in the state or place of its incorporation for the purpose of effecting the consolidation or merger which copy shall be certified by the public officer having official custody of the original, or, in lieu thereof, an executed counterpart of the agreement or certificate and thereupon the consolidation or merger shall be effective as to such domestic corporation. Neither the agreement nor any certificate shall be filed, however, until there has been filed with the Secretary of State a certificate executed by the Commissioner of Corporations to the effect that a permit has been issued or that in his opinion no permit is required under the provisions of the Corporate Securities Law. Certified copies of such agreement, certificate or other document shall be filed by each constituent domestic corporation as provided in Section 4114."

reply to the letter in which the request was set forth. On February 3, 1965, Giannini filed with the Commissioner a document withdrawing its application for a permit and consenting to the entry of an order of abandonment thereof, basing its withdrawal and consent on the fact that, under the circumstances, no securities would be issued to consummate the merger of Datex into Giannini and no permit for the issuance of securities would be required.

On or about February 9, 1965, Datex commenced an action in the Superior Court of the State of California for the County of Los Angeles entitled, *"Datex Corporation, a corporation, Plaintiff,* vs. *Carl P. Spaulding, Defendant,"* number 854041 in the files of the said court. This action was filed pursuant to the provisions of section 4306[6] of the Corporations Code to seek a judicial determination of the fair market value, as of December 20, 1964, of the 10,000 Datex shares owned by Spaulding.

On or about March 31, 1965, Giannini stockholders met to consider the approval of the merger agreement. At the meeting the merger agreement and the merger therein agreed upon were approved and adopted by the affirmative vote of more than two-thirds of the total number of outstanding common shares of Giannini and more than two-thirds of the outstanding preferred shares, the holders of which were entitled to vote thereon as a separate class. Such vote was sufficient for approval of the merger agreement under the applicable provisions of the New York Business Corporation Law and of Giannini's certificate of incorporation.

On or about April 8, 1965, counsel for Giannini and Datex again wrote to the Commissioner requesting the issuance of a certificate by the Commissioner to the effect that in his opinion no permit is required under the provisions of the Corporate Securities Law for the consummation of the merger of Datex into Giannini, and requesting prompt action on the request.

---

[6] "If the corporation denies that the shares are dissenting shares, or the corporation and the shareholder fail to agree upon the fair market value of the shares, then the shareholder demanding purchase of his shares as dissenting shares or any interested corporation, within six months after the date on which notice of the approval by the shareholders was mailed to the shareholder, but not thereafter, may file a complaint in the superior court of the county in which the corporation has its principal office praying the court to determine whether the shares are dissenting shares, or the fair market value of the dissenting shares, or both, or may intervene in any pending action for the appraisal of any dissenting shares."

On May 3, 1965, the Commissioner issued a notice of hearing wherein it was stated that commencing on May 24, 1965, the Commissioner would hold a hearing for the purpose of considering various questions, including "whether a certificate to the effect that no permit is required in order to consummate the merger should be issued," "whether or not the terms and conditions of the proposed merger and the securities to be issued by Giannini are fair, just and equitable," and whether the offer of securities to Spaulding by Giannini under the negotiating permit was fair, just and equitable. On May 24, 1965, the Commissioner through one of his deputies held the hearing insofar as it related to the question of whether Giannini was entitled to a certificate that in the Commissioner's opinion no permit is required to consummate its merger with Datex. At the conclusion of this hearing, the Commissioner, acting through the deputy, declined to issue the certificate or pass upon the question of whether such a certificate should be issued, but instead decided that commencing on May 26, 1965, he would hear evidence on and consider the question of whether or not the merger or the proposed issuance of securities in connection therewith or the offer made by Giannini to Spaulding pursuant to the negotiating permit were fair, just and equitable. Later, on May 24, 1965, Giannini and Datex filed a petition for a writ of mandate in the respondent court entitled "GIANNINI CONTROLS CORPORATION, a corporation, and DATEX CORPORATION, a corporation, Petitioners, v. CHARLES E. RICKERSHAUSER, JR., Commissioner of Corporation [*sic*] of the State of California, as such Commissioner, Respondent," number 860917. On May 25, 1965, an alternative writ of mandate was issued which, among other things, commanded the Commissioner either to issue to Giannini a certificate to the effect that in his opinion no permit is required under the provisions of the Corporate Securities Law for the consummation of the merger of Datex into Giannini, or to show cause on June 9, 1965, why a peremptory writ of mandate should not issue compelling him to do so. The alternative writ further commanded the Commissioner to stay all further proceedings before him on the matter of whether the proposed merger, the merger agreement, the proposed issuance or sale of shares pursuant to the merger agreement, or any offer of securities by Giannini to Spaulding are fair, just or equitable. On June 8, 1965, the Commissioner filed a demurrer by way of a return to the alternative writ and on

June 9, 1965, the matter was heard and submitted for decision.

On August 27, 1965, after having made its findings of fact, conclusions of law and order, which among other things retained and reserved jurisdiction over the cause and the subject matter thereof, the respondent court issued a peremptory writ of mandate commanding the Commissioner to act upon the request of Giannini for issuance of a certificate to the effect that in his opinion no permit is required under the Corporate Securities Law for the consummation of the merger of Datex into Giannini by either issuing such a certificate or expressly refusing to do so. On September 13, 1965, the Commissioner held a hearing on the question of whether or not there should be issued to Giannini the certificate it had requested. On September 20, 1965, the Commissioner executed and transmitted to Giannini his decision, findings of fact and conclusions whereby he refused to issue such certificate.

The decision, findings of fact and conclusions reveal that the Commissioner's decision to refuse the issuance of the certificate is based solely on the ground that while no securities are to be issued and no permit from the Commissioner is required as things now stand, there is a "remote possibility" that at some time in the future Spaulding may wish to withdraw his dissent to the merger, Giannini may consent to such withdrawal, and securities may then be issued to Spaulding for which a permit will be required.

On September 21, 1965, the Commissioner filed his return to the peremptory writ of mandate to which he attached his decision together with the findings of fact, conclusions and proposed decision of his hearing officer. These documents fully disclose that the sole reason upon which the Commissioner based his refusal to issue the requested certificate was the "remote possibility" hereinabove referred to.

The petitioners herein assert that Spaulding has never indicated any desire to withdraw his dissent, and they have stated unequivocally to the Commissioner that they will never consent to such a withdrawal, and further, in their verified petition to this Court, they assert "that they will never consent to such a withdrawal." Without such consent, Spaulding is now and will continue to be a dissenting shareholder entitled only to cash in exchange for his Datex shares and no securities will be issued to consummate the merger. (Corp. Code, § 4316, subd. (d).)

From the foregoing, it appears that Giannini and Datex have done all things necessary to entitle them to a certificate as provided for in section 4119 of the Corporations Code and that they have duly and regularly requested the Commissioner to issue such a certificate and he has refused to do so. Without such a certificate Giannini and Datex are prevented from consummating the merger to which they have agreed and which has been approved by their respective boards of directors and shareholders in compliance with all applicable laws.

■ On September 28, 1965, petitioners filed, in the mandate action below, a motion for leave to file a supplemental petition for writ of mandate, the purpose of which was to review the decision of the Commissioner, issued on September 20, 1965, wherein he had refused to issue the certificate which had been requested; to compel the Commissioner to set aside and vacate his decision of September 20, 1965, refusing to issue a certificate to Giannini and to issue a certificate as had been requested. The supplemental petition sought a peremptory writ. The motion to file the supplemental petition was denied on November 23, 1965.

■ The validity of the decision of the Commissioner was subject to review by petition for writ of mandate. (Code Civ. Proc., § 1094.5; Corp. Code, §§ 25317 and 25318; *Transportation Bldg. Co.* v. *Daugherty,* 74 Cal.App.2d 604 [169 P.2d 470]; *Crestlawn Memorial Park Assn.* v. *Sobieski,* 210 Cal. App.2d 43 [26 Cal.Rptr. 421]; *Western Air Lines, Inc.* v. *Sobieski,* 191 Cal.App.2d 399 [12 Cal.Rptr. 719].)

■ The court below, having reserved jurisdiction in the cause (*Gonzales* v. *International Assn. of Machinists,* 213 Cal.App.2d 817 [29 Cal.Rptr. 190]), and having all of the facts before it, including the matters set forth in the return of the Commissioner to the peremptory writ of mandate, should have granted the motion to file the supplemental petition and should have issued a peremptory writ of mandate compelling the Commissioner to issue the certificate as had been requested. To compel the petitioners to relitigate the same question under a different case number, by means of a petition for a writ of mandate, identical in form to the one here sought to be filed as a supplemental petition, would exalt form over substance.

The action commenced by petitioners on February 9, 1965, under the provisions of section 4306 of the Corporations

Code, to ascertain the fair market value of the dissenting shares of Spaulding, when prosecuted to a final judgment, will result in the acquisition of such shares by the payment of cash in exchange therefor, and no permit to issue shares of stock will be necessary. It may take several years for a judgment in this action to become final, in the event that an appeal is taken. In the meantime the merger between Giannini and Datex is held in abeyance by the refusal of the Commissioner to issue the certificate which he has been requested to issue. The Commissioner's refusal, for the reason that there is a "remote possibility" that sometime in the future Spaulding may wish to withdraw his dissent to the merger and that Giannini may consent to such withdrawal, is based upon pure conjecture. Furthermore, if the "remote possibility" should develop into reality so that a permit to issue stock would be required in order to consummate the merger, it would seem that an application for such a permit could then be filed, and upon a proper showing the permit would issue.

In the amici curiae brief it is asserted that (1) an affected shareholder is entitled to know what merger terms the Commissioner has found to be fair, just and equitable before he may be required to exercise or waive his statutory appraisal rights, and (2) to complete the merger without first securing a permit finding it to be fair, just and equitable would violate the condition of the negotiating permit to the effect that applicant "shall not . . . file any agreement of merger . . . unless and until the further permit of the Commissioner of Corporations has first been granted authorizing such action," and (3) that to complete the merger without first securing a permit finding, among other things, that the terms of the proposed merger are fair, just and equitable would violate section 25500 of the Corporations Code,[7] in that such

---

[7] "No company shall sell any security of its own issue, except upon a sale for a delinquent assessment against the security made in accordance with the laws of this State, or offer for sale, negotiate for the sale of, or take subscriptions for any such security, until it has first applied for and secured from the commissioner a permit authorizing it so to do.

"The provisions of this section do not apply to the issue or reclassification of shares of stock in any of the following transactions: (a) The issue of shares in a stock split, as defined in Section 115.1; (b) The issue of shares in a reverse stock split, as defined in Section 115.2; (c) The reclassification of outstanding shares having par value into an equal number of shares of a different par value or into an equal number of shares without par value; or (d) The reclassification of outstanding shares without par value into an equal number of shares having par value; provided that, in each case, (i) such issue or reclassification of

merger, under the facts here shown, would constitute the sale of a security under the provisions of section 25009 of the Corporations Code which defines a sale as "any change in the rights, preferences, privileges, or restrictions on outstanding securities." (Corp. Code, § 25009, subd. (a).)

■ The thrust of proposition (1) above is that a minority shareholder should not be compelled to elect whether he should vote his shares in favor of or against the merger, until he knows what merger terms the Commissioner has found to be fair, just and equitable. Before the Commissioner could make such a finding it would be necessary that he conduct a hearing. To conduct such a hearing and to reach the conclusion that a proposed merger agreement was or was not fair, just and equitable as to a minority shareholder might well consume many months from its commencement until its final conclusion. We find no provision in the applicable statutes which requires such a hearing as a condition precedent to the exercise of the election on the part of the minority shareholder. If the Legislature had intended that such a hearing before the Commissioner was a necessary step to be taken for the benefit of a minority shareholder, before he could be compelled to make his election, it could very easily have made express provision therefor, but it has not done so, and we do not believe that such a hearing is required as a condition precedent to the making of such election. This conclusion is further fortified by the provision of sections 4301 and 4302 of the Corporations Code which require the dissenting shareholder to make his election within 30 days after the date on which notice of the approval by the shareholders was mailed to the dissenting shareholder. Had the Legislature intended, as claimed, that the dissenting shareholder was entitled to a hearing before the Commissioner before he was required to make his election, the Legislature would not have limited the time in which to make such election to 30 days after notice of approval by the shareholders as provided in section 4301 of the Corporation Code.

---

shares does not change the proportionate interests of the holders of shares outstanding immediately prior thereto; (ii) no change is made in the rights, preferences, privileges or restrictions on outstanding shares other than such changes as necessarily result from such stock split, reverse stock split or reclassification of shares; (iii) the corporation has only one class of shares outstanding; and (iv) the shares to be outstanding immediately after such stock split, reverse stock split or reclassification will have a par value or, in the case of shares without par value, a stated value of not less than one dollar ($1) per share.''

■ As to proposition (2) above, the Commissioner, in his decision wherein he refused to issue the certificate as requested, concedes that "if the merger agreement by its terms had provided for the payment of cash to the shareholders of Datex, excluding Giannini, it seems apparent that the Commissioner would issue a certificate under Section 4119 that in his opinion no permit is required under the provisions of the Corporate Securities Law to consummate such a merger." The provisions of the Corporations Code governing mergers and consolidations (§§ 4100 et seq.), which were applicable, became a part of the merger agreement as if they were referred to and incorporated therein. (12 Cal.Jur.2d, Contracts, § 135, p. 348, and cases cited.) Sections 4306 to 4313, which constitute part of the applicable law relating to mergers and consolidations, provide the means whereby dissenting shares may be purchased for cash, and where the remedy provided by these sections is invoked, the acquisition of dissenting shares under the procedure provided is tantamount to the payment of cash for such shares, and no permit from the Commissioner is required to validate or consummate such a purchase sanctioned by the statutory procedures.

■ The statutory procedures whereby the dissenting shareholder may demand and receive cash for his shares in an amount equal to their fair market value, is exclusive of other legal and equitable remedies by which minority shareholders might seek to enjoin or attack changes such as a merger or consolidation, except on the question of an insufficient vote to authorize a merger or consolidation. (Corp. Code, § 4123.) It has been said in this connection that "It was deemed advisable to protect the majority against strike suits by abrogating equitable remedies by way of injunction or rescission to litigate charges of fraud or unfairness, which may be used to extort a settlement by obstruction of a transaction duly authorized." (Ballantine on Corporations (1946), p. 703.) Professor Ballantine was speaking with reference to the provisions of former section 369 of the Civil Code, the substance of which has now been incorporated in sections 4109 et seq. of the Corporations Code. "The crucial point at issue in equitable suits for rescission and also for preventive relief against merger or consolidation is after all usually one of price, as to the true exchange value of the dissenting shares, perhaps of only a small number of shares. The confining of litigation with dissenters to the question of value and compensation simplifies the issues to be tried and protects all

parties." (Ballantine on Corporations, *supra.*) "No fraud warranting the setting aside of a consolidation is committed on the shareholder when he receives the exact treatment the statute advised him was his due when he invested in the shares." (*Beechwood Securities Corp.* v. *Associated Oil Co.*, 104 F.2d 537, 540.) The assertion under proposition (3) above to the effect that a permit is required to consummate the merger for the reason that such merger will effectuate a change in the rights on outstanding securities, is without merit. As heretofore pointed out, the rights of the respective corporations and their shareholders were fixed by the applicable provisions of the Corporations Code relating to mergers and consolidations and the pursuit of these rights in accordance with the law, did not constitute a "change in the rights . . . on outstanding securities," so as to constitute a sale as defined in section 25009, subdivision (a) of the Corporations Code.

 The pursuit of the remedy to acquire the dissenting shares by paying an amount equal to their fair market value as provided in sections 4306 et seq. of the Corporations Code, as heretofore pointed out, is tantamount to a purchase of such shares for cash, and under such circumstances, the Commissioner has no jurisdiction to issue or refuse to issue a permit for the acquisition of the Spaulding shares.

The provision of the negotiating permit prohibiting the completion of the merger "unless and until the further permit of the Commissioner of Corporations has first been granted authorizing such action," simply placed the parties on notice that the negotiating permit did not authorize the issuance of securities pursuant to the agreement of merger, and if the securities eventually would be issued, pursuant to the agreement of merger then a further and definitive permit would first have to be obtained. Such language in the negotiating permit cannot be held to be a valid basis of claim by the Commissioner to retain jurisdiction over a subject (the purchase for cash of the dissenting shares) over which he had no jurisdiction in the first instance.

It may be noted here that the Commissioner did not base his refusal to issue the requested certificate on any of the grounds urged in the brief of amici curiae.

The Commissioner, by his refusal to issue the certificate requested, has in effect permitted a single dissenting shareholder to effectively block the merger of the petitioners

perhaps for a substantial number of years, thus placing them in a position of disadvantage, and where, in order to seek relief from the situation in which they find themselves, they might feel compelled to offer Spaulding a sum of money, in exchange for his dissenting shares, far in excess of their fair market value as of December 20, 1964.

The refusal of the Commissioner to issue the certificate as requested, under the circumstances here shown, constituted an abuse of discretion, and the respondent court should have granted the motion of petitioners to file the supplemental petition for a writ of mandate to review the decision of the Commissioner.

The record discloses that the Commissioner, before rendering his decision, had conducted a hearing on the question of whether he should issue or refuse to issue the certificate. Therefore, it does not appear that any further hearing on this question is necessary or proper. The return of the Commissioner, in response to the peremptory writ below, disclosed on its face that he had abused his discretion in refusing to issue the certificate as requested.

Let the peremptory writ of mandate issue, directing the respondent court to set aside its order denying petitioners' motion to file the supplemental petition; to order such petition to be filed and to proceed to determine the issues raised therein in accordance with the views herein expressed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied March 8, 1966, and the petition of the real party in interest for a hearing by the Supreme Court was denied April 13, 1966. Traynor, C. J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.