Leo M. MULLEN, M.D., Appellant,

v.

ACADEMY LIFE INSURANCE COMPANY and Michael F. Beausang, Jr., Appellees.

No. 82–1600.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 25, 1983.

Decided March 2, 1983.

Rehearing Denied March 23, 1983.

William J. Brennan, Butera, Beausang, Moyer & Cohen, King of Prussia, Pa., for appellees; Donald F. Bayer, Hoskins, King, McGannon, Hahn & Hurwitz, Kansas City, Mo., of counsel.

Leo M. Mullen, M.D., pro se.

Before HEANEY, McMILLIAN and ARNOLD, Circuit Judges.

PER CURIAM.

Dr. Leo Mullen appeals from the decision of the District Court granting summary judgment to the defendant, Academy Life Insurance Company (Academy Life), in Mullen's action challenging the terms for the acquisition of Pension Life Insurance Company (Pension Life) by its parent company, Academy Life. Mullen is a minority stockholder of Pension Life who filed suit to contest the valuation of his shares under Academy Life's Plan of Acquisition. The District Court held that under the law of New Jersey, where Pension Life is incorporated, Mullen's sole recourse was to file an appraisal action in the Superior Court of New Jersey, and that "collateral attack" in a federal court was not available. We hold that appraisal is not necessarily a minority stockholder's exclusive remedy under New Jersey law, and that the New Jersey statute should not be construed to foreclose the exercise of federal diversity jurisdiction. We therefore reverse.

I.

During 1964, Dr. Mullen, a citizen of Missouri, acquired 695 shares of Pension Life, an insurance company incorporated in New Jersey. Some years later Academy Life, the parent company and owner of over 500,000 shares of Pension Life, decided to eliminate the minority interest in Pension Life. In 1977 Academy Life purchased 8,950 shares from minority stockholders at $8.00 per share. In 1980 Academy Life attempted to acquire the remaining outstanding stock of Pension Life, totalling some 13,745 shares, by proceeding under a New Jersey statute which establishes a short-form merger procedure for parent companies to acquire subsidiary insurance companies. See N.J.Stat.Ann. §§ 17:27B–1 to –6 (West Supp.1982–1983). Accordingly, Academy Life filed a Plan of Acquisition of Minority Shares with the New Jersey Insurance Commissioner and proposed a purchase price of $8.00 per share. The Commissioner approved the Plan effective August 13, 1980.

In September of 1980, Academy Life sent notice of its Plan to all minority stockholders. The notice included information about the appraisal rights of dissenting stockholders under N.J.Stat.Ann. §§ 14A:11–1 to –11 (West 1969 & Supp.1982–1983) and instructed dissenting stockholders to invoke the ap-

praisal process within 30 days or lose their right to contest the valuation of their shares. Upon receiving the notice, Mullen responded with a notice of dissent on September 14, 1980. He did not pursue his statutory rights by initiating appraisal proceedings in the courts of New Jersey, but instead filed a pro se "Petition" in the District Court on October 27, 1980, alleging that his stock was worth considerably more than the $8.00 per share offered under the Plan. In his Petition, Mullen made general reference to the value of Pension Life as evidenced by its annual statement, and then asserted that he was entitled to $100 per share.

After some discovery, on October 23, 1981, Academy Life moved for summary judgment on a variety of grounds. The District Court accepted Academy Life's argument that exclusive jurisdiction over the subject matter of Mullen's action resided in the New Jersey Superior Court in a statutory appraisal proceeding. Accordingly, the District Court granted Academy Life's motion for summary judgment on April 16, 1982. This appeal followed.

## II.

At issue on this appeal is whether the District Court correctly concluded that a minority stockholder in a New Jersey insurance company who wishes to contest a merger under N.J.Stat.Ann. §§ 17:27B–1 *et seq.* may seek redress only in an appraisal proceeding in the New Jersey Superior Court. The District Court's opinion may be separated into two component holdings: first, that a minority stockholder such as Mullen is limited to his appraisal remedy, and second, that the New Jersey Superior Court has sole jurisdiction over appraisal proceedings, to the exclusion of federal diversity jurisdiction.[1] We examine each component in turn.

*Exclusiveness of appraisal*

The exclusiveness of a minority stockholder's appraisal right in the context of a corporate "freezeout"[2] has been the subject of a developing body of case law[3] and commentary[4] in recent years. These and other authorities suggest that majority stockholders owe minority stockholders a fiduciary duty which is independent of statute and which may be enforced in an action other than a statutory proceeding. In *Singer v. Magnavox Co.,* 380 A.2d 969, 979 (Del.1977), the Delaware Supreme Court held that a merger which complies with all statutory formalities may be found illegal in an equitable proceeding if it is unfair to the minority. As the Third Circuit explained in *Coleman v. Taub,* 638 F.2d 628 (3d Cir.1981), "[C]ompliance with the letter of the Delaware merger statutes ought not to insulate the fiduciaries' acts from scrutiny as to the purpose of the freeze-out. To do so would be to consign the minority to an appraisal

---

**1.** In his appellate brief, Mullen asserts that his action is based on federal securities law. We do not consider this argument, which is raised for the first time on appeal. Instead, we find diversity, 28 U.S.C. § 1332, to be the jurisdictional basis relied on by Mullen in the District Court. Academy Life admitted Mullen's allegation that he resides in and is a citizen of Missouri, and that Academy Life is a Colorado insurer with headquarters in Pennsylvania. In addition, Mullen requested well over $10,000 in damages, although Academy Life contends that $5,560 (695 shares at $8/share) is the total amount in controversy. Michael F. Beausang, Jr., the co-defendant, appears to be a citizen of Pennsylvania.

**2.** A "freezeout" occurs when the majority stockholders of a corporation eliminate all minority stockholders either through merger or some other mechanism.

**3.** See, *e.g., Singer v. Magnavox Co.,* 380 A.2d 969 (Del.1977); *Berkowitz v. Power/Mate Corp.,* 135 N.J.Super. 36, 342 A.2d 566 (1975). Although New Jersey law governs the Pension Life acquisition, we discuss Delaware case law as well, because of Delaware's position as a leader in the field of corporate law. The courts of other states commonly look to Delaware law (and, to a lesser degree, to the law of New Jersey) for aid in fashioning rules of corporate law.

**4.** See, *e.g.,* Brudney & Chirelstein, *A Restatement of Corporate Freezeouts,* 87 Yale L.J. 1354 (1978); Vorenberg, *Exclusiveness of the Dissenting Stockholder's Appraisal Right,* 77 Harv.L.Rev. 1189 (1964).

proceeding for vindication of its entire right to corporate participation." *Id.* at 635 (footnote omitted). *Singer* involved a long-form merger, but in *Roland International Corp. v. Najjar,* 407 A.2d 1032 (Del.1979), the Delaware Supreme Court made it clear that fiduciary-duty principles apply to short-form mergers as well.

If Academy Life had proceeded under New Jersey's general merger statute, Mullen clearly would not be limited to his appraisal right. In *Berkowitz v. Power/Mate Corp.,* 135 N.J.Super. 36, 342 A.2d 566 (1975), the New Jersey Superior Court recognized the right of minority stockholders to sue majority stockholders for breach of fiduciary duty in connection with a merger under N.J.Stat.Ann. §§ 14A:10–1 to –12 (West 1969 & Supp.1982–1983). Moreover, the New Jersey dissent provisions themselves deny that appraisal is exclusive. See N.J.Stat.Ann. § 14A:11–5(2) ("[T]his subsection [concerning appraisal rights] shall not exclude the right of such dissenting shareholder to bring or maintain an appropriate action to obtain relief on the ground that such corporate action will be or is ultra vires, unlawful or fraudulent as to such dissenting shareholder.").

Academy Life did not follow New Jersey's general long-form or short-form merger statute, but instead chose to use N.J. Stat.Ann. §§ 17:27B–1 *et seq.,* which establishes a separate, alternative short-form merger procedure for a parent company owning at least 95% of the stock of a New Jersey insurance company to acquire 100% ownership. Academy Life argues that section 17:27B–6, which addresses dissenters' rights, does not allow for remedies other than appraisal. See N.J.Stat.Ann. § 17:27B–6(2) ("Upon giving such notice, the dissenting shareholder shall cease to have any rights of a shareholder, except the right to be paid the fair value of his shares . . . ."). Section 17:27B–6 incorporates

many of the dissent provisions from the general merger statute, but it does not specifically incorporate N.J.Stat.Ann. § 14A:11–5(2), which makes appraisal non-exclusive. The omission may have been inadvertent, or it may have been an intentional effort to make dissenters' appraisal rights exclusive in the acquisition of subsidiary insurance companies. The statutory language is not conclusive, and there are no New Jersey cases specifically construing the insurance-company acquisition statute.

■ *Berkowitz* gives a strong indication of how the New Jersey courts might respond if asked whether appraisal is exclusive under N.J.Stat.Ann. § 17:27B–6. The *Berkowitz* opinion does not rely on the language of the particular merger statute being used for the freezeout, but instead phrases the issue in terms of the powers of equity to intervene where statutory requirements have been met but statutory remedies are inadequate. Accordingly, we conclude that New Jersey would be more likely to follow the lead of courts which have held appraisal not to be exclusive in fact, even where the applicable statutes apparently specify appraisal as the exclusive remedy for dissenters. See, *e.g., Lachman v. Bell,* 353 F.Supp. 37, 41–42 (S.D.N.Y. 1972) (existence of appraisal as exclusive statutory remedy under Delaware merger law does not foreclose suit in equity); *Miller v. Steinbach,* 268 F.Supp. 255, 270–71 (S.D.N.Y.1967) (exclusivity of appraisal under Pennsylvania merger law relates only to mergers not tainted by fraud); *Weckler v. Valley City Mill. Co.,* 93 F.Supp. 444, 455 (W.D.Mich.1950) (phrase "exclusive remedy" in Michigan appraisal statute relates only to good-faith sales), *aff'd per curiam,* 188 F.2d 367 (6th Cir.1951). *But see Yanow v. Teal Industries, Inc.,* 178 Conn. 262, 269–80, 422 A.2d 311, 316–21 (1979) (appraisal right held to be exclusive remedy to attack merger).[5]

---

**5.** One commentator noted that the Connecticut statute is "unusually explicit in making the [appraisal] remedy exclusive." Manning, *The Shareholder's Appraisal Remedy,* 72 Yale L.J.

223, 247 n. 38 (1962). The statute provides that "[w]here the right to be paid the value of shares is made available to a shareholder by this section, such remedy shall be his exclusive

Although Mullen's Petition is very conclusory, it may be characterized as a complaint that Academy Life violated its fiduciary duty to him by undervaluing his shares in its Plan of Acquisition. Other jurisdictions have formulated certain limitations on actions for breach of fiduciary duty, but they would not preclude consideration of Mullen's complaint. For example, in New York, a stockholder who exercises his appraisal rights may not later maintain an action for breach of fiduciary duty. *Breed v. Barton,* 54 N.Y.2d 82, 444 N.Y.S.2d 609, 429 N.E.2d 128 (1981). New Jersey does not appear to have adopted this position, and in any case the only step Mullen took in the appraisal process was to send notice of dissent, which hardly constitutes an exercise of his appraisal rights. It might be argued that Mullen's Petition, which asks only for money damages, is nothing more than an untimely and improper attempt to commence an appraisal proceeding inconsistent with the New Jersey statute. A similar argument was made in *Roland International Corp. v. Najjar, supra,* but only the dissenting justice accepted it. 407 A.2d at 1039–40. The majority, in contrast, permitted the minority stockholder plaintiff to proceed with his equitable action for breach of fiduciary duty even though he requested only the fair value of his shares as a remedy, which he presumably could also have gained through an appraisal action.

*Exclusiveness of state court's jurisdiction*

The District Court held not only that Mullen was limited to his statutory appraisal remedy, but that in addition he was limited to the venue specified by N.J.Stat. Ann. § 14A:11–8 ("In any action to determine the fair value of shares pursuant to this Chapter: (a) The Superior Court shall have jurisdiction ...."). The effect of the District Court's deference to the statute conferring jurisdiction on the New Jersey Superior Court is to allow New Jersey to divest the District Court of a portion of its diversity jurisdiction. Such a result runs contrary to the long-established rule that

remedy as holder of such shares against the corporate transactions described in this section, whether or not he proceeds [with an ap-

states may not limit federal jurisdiction by passing restrictive statutes. As the Supreme Court explained in *Railway Co. v. Whitton's Administrator,* 13 Wall. [80 U.S.] 270, 286, 20 L.Ed. 571 (1871):

> Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation.

See also *Duchek v. Jacobi,* 646 F.2d 415, 419 (9th Cir.1981) (state may not preclude federal courts from enforcing state judgments); *Greyhound Lines, Inc. v. Lexington State Bank & Trust Co.,* 604 F.2d 1151, 1154–55 (8th Cir.1979) (Nebraska legislature's decision to place exclusive jurisdiction over claims against estates in county courts does not abrogate federal diversity jurisdiction); *Kanouse v. Westwood Obstetrical & Gynecological Associates,* 505 F.Supp. 129, 129 (D.N.J.1981) (state statute cannot divest district court of diversity jurisdiction over medical malpractice claims). If the New Jersey statute is construed to exclude the jurisdiction of federal courts, a serious constitutional question would arise. This consideration furnishes an additional reason not to interpret the New Jersey statutory procedure as exclusive.

### III.

We can understand the District Court's reluctance to intervene in a dispute regarding the internal affairs of a New Jersey corporation. In addition, many of the authorities we have relied on were not cited to the District Court. We nevertheless conclude, for the reasons given in this opinion, that the New Jersey statute should not be construed as an attempt to oust the District Court of a portion of its statutory diversity jurisdiction. The judgment is reversed, and the cause remanded to the District Court for further proceedings consistent with this opinion.

It is so ordered.

praisal action]." Conn.Gen.Stat. § 33–373(f) (1981). The New Jersey statute is less explicit.