[L.A. 32154. Dec. 31, 1986.]

DAVID J. STEINBERG, Plaintiff and Appellant, v.
AMPLICA, INC., et al., Defendants and Respondents.

**COUNSEL**

William S. Lerach, Jan M. Adler, Steven W. Pepich, Milberg, Weiss, Bershad, Specthrie & Lerach, Robert A. Swift, David H. Marion and Kohn, Savett, Marion & Graf for Plaintiff and Appellant.

Robert L. Dunn, Rebecca A. Thompson, Bancroft, Avery & McAlister, Michael A. Greene, Michael K. Collins, Greenberg, Glusker, Fields, Claman & Machtinger, Manuel S. Klausner, Kindel & Anderson, Harold Marsh, Jr., Paul T. Dye, Gregg A. Farley, Brobeck, Phleger & Harrison, Douglas M. Schwab, Daniel E. Titelbaum and Heller, Ehrman, White & McAuliffe for Defendants and Respondents.

**OPINION**

**MOSK, J.**—The Corporations Code provides that the holder of shares in certain types of corporations may require the corporation to purchase his shares for fair market value if the corporation merges with another, and the shareholder dissents from the merger. (Corp. Code, §§ 1300, 1301.)[1] The corporation must offer the dissenting shareholder a price which it determines

---

[1]All references are to the Corporations Code unless otherwise noted.

to be fair market value for his shares (§ 1301, subd. (a)). In the event of a failure to agree on a price, he may file an action in the superior court to determine such value, and the court may either decide the issue or refer the matter to an appraiser to do so (§§ 1304, 1305).

Section 1312, subdivision (a) (hereinafter section 1312(a)), provides in relevant part, "No shareholder of a corporation who has a right under this chapter to demand payment of cash for the shares held by the shareholder shall have any right at law or in equity to attack the validity of the reorganization or short-form merger, or to have the reorganization or short-form merger set aside or rescinded. . . ."[2] We are concerned in this case with whether under section 1312(a) appraisal is the exclusive remedy for a shareholder who alleges that his shares were undervalued because of fraud and breach of fiduciary duty by the majority stockholders and others in connection with the merger, and whether an action for compensatory and exemplary damages will lie for such purported misconduct.[3]

Only one California case has considered the precise issue before us. In *Sturgeon Petroleums, Ltd.* v. *Merchants Petroleum Co.* (1983) 147 Cal.App.3d 134 [195 Cal.Rptr. 29], it was held that appraisal was the exclusive remedy of a dissenting shareholder even though he claimed fraud and breach of fiduciary duty by corporate directors and officers. Plaintiff claims that *Sturgeon* was wrongly decided.

Prior to July 22, 1981, defendant Amplica, Inc. (Amplica), was a privately held corporation. On that date, 1,150,000 shares of its stock were offered to the public. Plaintiff purchased 75 shares at $10 each, and he still held 50 shares at the time of the merger. Both before and after the public offering, the majority of Amplica's stock was held by several of the defendants in this action, some of whom were also officers and directors of the corporation.

On October 9, 1981, Amplica announced that it had entered into a merger agreement with defendant Communications Satellite Corp. (Comsat), another corporation, whereby a Comsat subsidiary would merge with Amplica, the result being that Amplica would become a wholly owned subsidiary. The announcement stated that the shares of Amplica's stockholders would be purchased at $13.50 each, which was 50 cents or $1 over the closing

---

[2] Section 181, subdivision (b), provides that a reorganization includes a merger in which one corporation acquires the securities of another if, after the merger, the acquiring corporation controls the corporation acquired.

[3] Our references to appraisal as an "exclusive remedy" are to be understood as referring to mergers in which one merging corporation does not control the other and they are not under common control. (Cf. § 1312, subd. (b).)

bid price on the stock market on the day before the announcement. The total offering price was $56 million. Amplica notified its shareholders that a stockholders' meeting would be held to vote on the merger on December 7 and that a majority of the shareholders had expressed their intention to vote in favor of the merger. The announcement was accompanied by a proxy statement which set forth the details of the proposed merger. Less than 1 percent of the shares voted against the merger. Plaintiff did not express his opposition, but turned in his shares and was paid the offered price, i.e., $13.50 per share or $3.50 per share more than he had paid for the stock less than five months earlier.

Following the merger in January 1982, plaintiff filed this action as a class action, on behalf of himself and stockholders who had purchased Amplica stock within 90 days of the first public offering and still held the stock at the time of the merger.[4] He joined as defendants, inter alia, Amplica, Comsat, and several of the directors and officers of Amplica who held a majority of its shares before the merger.[5]

It was alleged that defendants had misrepresented the public offering of Amplica stock in the prospectus in that it did not reveal that Amplica was in the process of seeking a merger partner. Further, the prospectus stated that Amplica would use the proceeds of the stock sales to expand the company's plant and purchase equipment and for general corporate purposes, whereas defendants intended to and did use some of the proceeds to pay off Amplica's outstanding debts and accumulate a large amount of cash to make Amplica an attractive merger partner. The individual defendants who were officers or directors of Amplica received substantial financial benefits from the merger, such as employment contracts, stock options, the lifting of restrictions on Amplica stock, and preferential tax advantages, and the class members did not receive these benefits. In addition, several of Amplica's directors and officers agreed in advance with Comsat that they would not solicit or initiate discussions relating to other merger opportunities. The effect was to freeze out the public shareholders at a grossly inadequate price. The merger served no legitimate business purpose, but was a device by defendants to benefit themselves to the detriment of the class. These acts

---

[4]The trial court did not rule on the class certification issue.

[5]Also joined as defendants were a venture capital firm which held almost 14 percent of Amplica's stock before the merger, the general partner of the firm, the lead underwriter for the public offering of Amplica stock, which also assisted in negotiating the merger terms, and two corporations related to Comsat. Although the basis on which these defendants are sued differs (some were shareholders, others were in addition officers and directors who allegedly received improper benefits, while still others assisted in negotiating the merger), for ease of reference they will be referred to collectively as defendants.

were alleged to constitute fraud, breach of fiduciary duty, and the accomplishment of a "freeze-out" in violation of California law.[6]

■ ■ ■ ■ Plaintiff prayed for a declaration that defendants had committed gross abuses of trust and breached their fiduciary duties, an award of compensatory and exemplary damages, and "the disgorgement of defendants' ill-gotten gains."[7]

Defendants demurred to the complaint on the ground, among others, that under section 1312(a) appraisal was plaintiff's exclusive remedy. The court overruled the demurrers. Thereafter, following the decision in *Sturgeon, supra*, 147 Cal.App.3d 134, defendants filed a motion for summary judgment based on the holding of that case. The motion was granted, and judgment entered in defendants' favor.[8] On appeal, the Court of Appeal affirmed, holding that *Sturgeon* was correctly decided, and that appraisal was plaintiff's exclusive remedy.[9]

Every American state except West Virginia has an appraisal statute. At common law, consent of all stockholders of a corporation was necessary to accomplish basic changes in corporate structure. This was a severe impediment to the ability of the majority to effect reorganizations; a minority, by

---

[6]A "freeze-out" has been defined as a "*purpose* to force a liquidation or sale of the stockholder's shares, not incident to some other wholesome business goal." (Vorenberg, *Exclusiveness of the Dissenting Stockholder's Appraisal Right* (1964) 77 Harv.L.Rev. 1189, 1192-1193.)

[7]The prayer also sought the unwinding of the merger, but plaintiff subsequently waived his claim to such relief. As to the request for "disgorgement" by defendants, this remedy is inappropriate here since any return of benefits wrongfully received would be to the corporation rather than to the limited group of minority stockholders plaintiff seeks to represent in this action.

[8]The complaint contained an allegation that the merger failed to comply with a provision of the Corporations Code that each share of the same class must be treated equally with respect to distribution of cash, rights or securities. (§ 1101, subds. (d), (e).) The additional financial benefits allegedly received by the officer and director defendants violated this statute, according to the complaint. Plaintiff does not claim that this cause of action is exempt from the bar of section 1312(a).

[9]We have stated the facts as they appear in the complaint. Defendants claim that the trial court accepted as true declarations filed by them in support of their motion for summary judgment. These declarations contradicted some of plaintiff's allegations. Therefore, argue defendants, the facts considered by the trial court in ruling in their favor were not those alleged by plaintiff, but those stated in the declarations. We reject this assertion because the record does not demonstrate that the court accepted the truth of defendants' declarations insofar as they relate to the issue before us. It made no findings of fact, and it appears to have relied on the holding of *Sturgeon* as the ground for its ruling in defendants' favor. For the same reason, we reject the claim that the court found in defendants' favor on an additional factual issue, i.e., that plaintiff suffered no damages because he realized a profit on his shares as a result of the merger.

refusing to agree to a merger, or by demanding an unreasonable amount for their shares as a condition to agreement, could delay or thwart a merger altogether. To solve this problem, appraisal statutes were enacted, enabling the majority to effect a merger, but the minority were granted the right to receive fair cash value for their shares, with the remedy of appraisal in the event of a disagreement. Thus, the minority could not victimize the majority by failing to cooperate in the merger plan, but they were not at the mercy of the majority as to the value of the shares of the merged corporation. (See 1A Ballantine & Sterling, Cal. Corporation Laws (4th ed. 1986) § 262.05, pp. 12-75 to 12-76; 12B Fletcher, Cyc. Corp. (Perm. ed.) § 5906.1, pp. 342-343; 15 Fletcher, *supra,* § 7165, p. 297.)

In deciding whether plaintiff's sole remedy to challenge the alleged misconduct of defendants is appraisal, we turn to the language of section 1312(a). It provides, as we have seen, that if a shareholder has the right to demand that the corporation purchase his shares, he shall have no power "at law or in equity" to attack the validity of the merger or to have it set aside or rescinded. Plaintiff asserts that this provision prohibits only an action to set aside or unwind a merger, or one for damages where there is a good faith dispute as to the value of a minority shareholder's stock. According to plaintiff, where, as here, a shareholder alleges fraud or breach of fiduciary duty by those connected with the merger, he cannot obtain effective redress if he is confined to appraisal. Not surprisingly, defendants call for a different construction of the section. They claim plaintiff's action is barred because it amounts to an attack on the validity of the merger. This disagreement is reflected in the analysis of commentators who have considered the matter. (Compare 1A Ballantine & Sterling, *supra,* § 262.05(f), p. 12-93 with 2 Marsh, Cal. Corporations Law (2d ed.) § 18.25, p. 532.1; Barton, *Business Combinations and the New General Corporation Law* (1976) 9 Loyola L.A. L.Rev. 738, 798.)

We disagree with plaintiff's first contention that section 1312(a), by prohibiting an attack on the "validity" of a merger, only proscribes an action to set aside or rescind it. The difficulty with this claim is that it fails to give any meaning to the command of the section that an action may not be brought "at law" to challenge the validity of the merger.[10] It is an elementary rule of statutory construction that, if possible, every word and phrase of a statute should be given significance in order to effect the legislative intent. (*People* v. *Black* (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104].) While the scope of the prohibition stated in the section is not clear, it must mean at the very least that a minority

---

[10]Plaintiff claims that the prohibition against an action "at law" does not bar a suit seeking damages for fraud or breach of fiduciary duty, but he does not suggest any alternate meaning for that term as used in the section.

shareholder may not seek damages which result from the fact that he no longer has an interest in the merged corporation because a merger has been consummated. This construction is consistent with the provisions of the Corporations Code authorizing corporations to merge (§ 1100), and with provisions for compensation of the shareholders of the merged corporation in cash (§ 1101, subd. (d)); see also *Beechwood Securities Corporation, Inc.* v. *Associated Oil Company* (9th Cir. 1939) 104 F.2d 537, 540.)[11]

■ The allegations of the complaint relating to misrepresentations made in the prospectus issued in connection with the public offering of Amplica stock and those relating to the "freeze-out" of the public shareholders fall within this prohibition. As we have seen, it is alleged that the prospectus failed to mention that Amplica was searching for a merger partner, and it stated that the proceeds of the sale would be used to expand and improve Amplica's business, whereas defendants intended, instead, to and did use the proceeds to pay off Amplica's debts and improve its attractiveness as a merger partner. In addition, the merger was alleged to be illegal because it was not accomplished for a valid business purpose but to "freeze out" the public shareholders. As a result of such misconduct, plaintiff alleges, he suffered damages in that he was deprived of the opportunity to share in the successful future course of Amplica's business.

The conclusion is unavoidable that by these allegations plaintiff claims that it was improper for Amplica and Comsat to enter into a merger agreement and that in the words of the complaint he was damaged in that he was "deprived of the opportunity to participate" in Amplica's future success. This amounts to a claim for damages because of the consummation of the merger, and therefore an attack on its validity.[12]

The gravamen of the remaining allegations is that defendants breached their fiduciary obligation in agreeing to the merger terms, and in the process engaged in self-dealing and other breaches of duty. As a consequence of

[11]*Beechwood,* in rejecting a challenge to the constitutionality of the then-existing appraisal statutes, analyzes the right of a shareholder under those statutes as follows: "In effect, these code sections . . . . say to a shareholder, 'When you buy stock in a California corporation you are advised that your associate shareholders holding two-thirds of the shares may consolidate your corporation with another into a third corporation, offer you what they please of its shares in exchange for those you hold, and, if you do not like the offer, may buy out your shares at their fair market value at the time they vote the consolidation.' . . . There is no underlying 'natural right' of a shareholder in a corporation to follow his investment into a consolidated corporation." (104 F.2d at p. 540.)

[12]In view of our determination of this issue, it is not necessary to discuss defendants' claim, made in support of the motion for summary judgment and reiterated on appeal, that plaintiff failed to allege fraud because he admitted in his deposition that he had not read the prospectus before he purchased his shares and therefore could not have relied on the statements made therein.

this misconduct, they obtained substantial benefits for themselves, resulting in the payment of an unfairly low price for the shares of the public shareholders. In this connection, it is important to note that with one minor exception, the facts on which plaintiff relies in support of his claim of breach of fiduciary duty were revealed in the proxy statement sent to shareholders before the meeting at which the merger was approved.[13]

Thus, we are not concerned with a claim that defendants acted fraudulently by concealing or misrepresenting the terms of the merger. Nor does plaintiff contend that he was unaware of his right to appraisal as a result of defendants' alleged misconduct. Indeed, plaintiff acknowledged in a deposition that he discussed his right to appraisal with his attorney before the merger but decided not to seek that remedy. Our inquiry, then, is whether under section 1312(a) a minority shareholder who is aware of the facts underlying his claim of breach of fiduciary duty may choose whether to seek appraisal or to allow the merger to proceed without dissent and to pursue an action not only for the fair market value of his shares (the same remedy he would obtain by appraisal), but for exemplary damages as well, and in the process hold individual corporate officers and others involved in the merger liable for such damages.

The language of section 1312(a) does not provide a ready answer, for it is not entirely clear whether such a claim amounts to an attack on the "validity" of the merger. To some extent, it favors defendants' position since, by providing that a shareholder may not attack the validity "or" seek to set aside or rescind a merger, it implies that the term "validity" means something different than setting aside or rescinding. There is, therefore, serious doubt of the correctness of plaintiff's claim that the bar of the statute is confined to equitable actions to undo a completed merger.

The parties make a number of arguments in support of their interpretations of this crucial term. Both sides assert that the legislative history of section 1312(a) demonstrates that appraisal was intended to be the exclusive remedy for a minority shareholder who dissents from the merger. They rely to a substantial extent on an article by Professors Ballantine and Sterling, who drafted section 369, subdivision (17) of the Civil Code, a predecessor to section 1312(a). (Ballantine & Sterling,. *Upsetting Mergers and Consoli-*

---

[13]The proxy statement notified the shareholders that if they held stock for less than six months before the merger they would be taxed on their profits as ordinary income, but did not state that the majority shareholders would all realize long term capital gains as a result of the merger because they held their shares longer than one year. Additional allegations of concealment are made, but they are not allegations of fact but conclusions, such as that defendants failed to disclose that the merger terms were unfair to the public shareholders or that the purpose of the merger was to benefit the majority.

*dations* (1939) 27 Cal.L.Rev. 644.) But we find no clear indication here whether the authors viewed appraisal as the exclusive remedy for a dissenting shareholder.[14] Furthermore, the language of section 369, subdivision (17), was different from section 1312(a).[15]

Second, defendants claim that because the Legislature has provided in subdivision (b) of section 1312 an exception to section 1312(a), it must have viewed appraisal as the exclusive remedy whenever the exception does not apply. While the existence of an exception indicates that shareholders who do not come within it are limited in some respect as to the remedies they may invoke, this fact does not shed much light on the scope of such limitation, particularly since the exception itself is expressed substantially in the language of section 1312(a).[16]

In deciding whether the Legislature intended to render appraisal the exclusive remedy under the circumstances of the present case, we consider the objectives which the Legislature sought to achieve in enacting section 1312(a). As we have seen, the aim of appraisal is to allow mergers which are advantageous to the corporation to proceed, while assuring that minority shareholders receive a fair value for their shares. It seems clear that a minority shareholder who, like plaintiff, claims that his shares were undervalued because of self-dealing and other misconduct by corporate insiders cannot obtain a fair value for his shares unless he is afforded the opportunity to

---

[14]The article contains passages which would support the views of either side in this dispute. For example, appraisal is referred to as the remedy "exclusive of irresponsible individual attempts to upset an entire merger or consolidation" (at p. 645), and the authors observe that "[p]ractically the only remedy of which shareholders have been deprived [by the statute] is a right of action to attempt to upset the entire transaction for fraud" (at p. 648). In another passage relied on by defendants, the authors describe the effect of the appraisal statute as granting to the minority rights "exclusive of any legal or equitable remedy to attack the transaction on the ground of fraud or abuse of power which would tend to keep the whole transaction in uncertainty" (at p. 658). The article summarizes the remedies available to a shareholder in a merger in some detail; the enumerated remedies do not include an action for fraud or breach of fiduciary duty by a shareholder except for fraudulent procurement of his vote (at pp. 667-668).

[15]Section 369, subdivision (17), provided: "The rights and remedies of any shareholder at law or in equity to object to or litigate as to any . . . merger or consolidation shall be and are hereby limited to the right to receive the fair cash value of his shares in the manner and upon the terms and conditions provided in this section . . . ." (Stats. 1931, ch. 862, § 2, p. 1819.)

[16]Section 1312, subdivision (b), provides in part: "If one of the parties to a reorganization or short-form merger is directly or indirectly controlled by, or under common control with, another party to the reorganization or short-form merger, subdivision (a) shall not apply to any shareholder of such party who has not demanded payment of cash for such shareholder's shares pursuant to this chapter; but if the shareholder institutes any action to attack the validity of the reorganization or short-form merger or to have the reorganization or short-form merger set aside or rescinded, the shareholder shall not thereafter have any right to demand payment of cash for the shareholder's shares pursuant to this chapter. . . ."

demonstrate that the misconduct he alleges has in fact occurred. The question is whether he must do so in an action for appraisal or whether he may forego that remedy and seek damages. The major advantage to a shareholder in pursuing the latter course is that, unlike an action for appraisal, which is only against the corporation (§§ 1300-1304), he can seek to hold the alleged wrongdoers personally liable for their misconduct and can sue not only for the value of his shares—the same remedy as he would obtain by appraisal—but for exemplary damages as well.

The statutes contain an elaborate procedure for perfecting the right to appraisal (§§ 1300-1304), but shed little light on the scope of an appraisal proceeding.[17] In *Sturgeon,* it was held that a shareholder may litigate his claim of misconduct in an appraisal proceeding, and to the extent he is able to prove that the value of his shares was diminished by misconduct in connection with the merger, his recovery could be adjusted in that proceeding. (147 Cal.App.3d 134, 141.)

We see nothing in the appraisal statutes to prevent vindication of a shareholder's claim of misconduct in an appraisal proceeding, and plaintiff does not claim to the contrary. Thus, there is merit in defendants' position that since plaintiff could have obtained full compensation by way of appraisal, he should not be able to avoid the statutorily mandated procedure by simply choosing not to invoke it.

Contrary to plaintiff's assertion, appraisal is as adequate a remedy for a shareholder who bases his claim of undervaluation on breach of fiduciary duty as to one who argues that his shares were undervalued due to a good faith dispute of their worth, provided that the issue of misconduct may be litigated in an appraisal proceeding. Plaintiff relies on the observations of commentators who state that appraisal is technically complex, that it may be expensive,[18] and may result in adverse tax consequences to the minority. (Eisenberg, *Modern Corporate Decisionmaking* (1969) 57 Cal.L.Rev. 1, 85; Vorenberg, *Exclusiveness of the Dissenting Stockholder's Appraisal Right, supra,* 77 Harv.L.Rev. 1189, 1201-1204; Manning, *The Shareholder's Appraisal Remedy* (1962) 72 Yale L.J. 223, 232-233.)

But these contentions must be addressed to the Legislature. To the extent they are valid, they apply to all shareholders who claim undervaluation of

---

[17]Section 1304, provides that a shareholder may "file a complaint in the superior court . . . praying the court to determine . . . the fair market value of the dissenting shares" (subd. (a)) and that "the court shall determine . . . the fair market value" or appoint an appraiser to do so (subd. (c)).

[18]In California, the costs of appraisal may be fixed by the court in its equitable discretion. If the value awarded by the court is more than 125 percent of the price offered by the corporation, the court may award attorney fees, fees of expert witnesses and interest. (§ 1305, subd. (e).)

their shares, whether or not such undervaluation results from a breach of fiduciary duty. California has had an appraisal statute since 1931 (Stats. 1931, ch. 862, § 2, pp. 1817-1819), and we cannot ignore the Legislature's determination that appraisal is an adequate remedy to rectify undervaluation of minority shares in a merger. We note also that plaintiff alleges in the complaint that he failed to seek appraisal because that remedy "would require expense, delay and time." It is hardly necessary to state that this would not provide a legally sufficient reason to fail to seek appraisal where that remedy would be appropriate.

We think that the question whether the Legislature intended to confine a shareholder in plaintiff's position to appraisal depends on considerations of public policy. There are impressive arguments on both sides of the issue.

On the one hand, some of the evils which an action for appraisal was designed to avoid would occur if a minority shareholder, fully informed as to the facts underlying his claim of breach of fiduciary duty, was permitted to bring an action for damages in excess of the fair market value of his shares against the corporation and individual wrongdoers connected with the merger. The threat of such litigation could, like an action to set aside a merger, prevent the consummation of reorganizations which would benefit the majority and the corporation as a whole. Or the corporation might be pressured into making concessions to the minority which would be unwarranted absent such a threat. The so-called "strike suit" would be encouraged. The prospect of personal liability of those who arranged the merger, including liability for punitive damages, would be almost as powerful a disincentive to legitimate mergers as a threat to unwind the merger. Since the gravamen of a cause of action for appraisal and breach of fiduciary duty in this context is substantially the same—i.e., that the shares have been undervalued by the corporation—and the actions differ only as to the reason alleged for the undervaluation, minority shareholders could seek to avoid appraisal for the opportunity to collect larger damages by characterizing the conduct which led to the undervaluation as a breach of fiduciary duty. In many cases, the remedy of appraisal provided by the Legislature for an inadequate offer for minority shares would be circumvented.

If we were to look only to the Legislature's objective in enacting section 1312(a) we would conclude that plaintiff's action is barred. But there is a countervailing policy which we cannot overlook: the strong public interest in assuring that corporate officers, directors, majority shareholders and others are faithful to their fiduciary obligations to minority shareholders.

In *Jones* v. *H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93 [81 Cal.Rptr. 592, 460 P.2d 464], we reiterated the force and broad scope of this policy as it

applied to majority shareholders in a nonmerger context. There, the plaintiff alleged that defendant majority had promoted a marketing scheme on their own behalf, to the detriment of the minority. We stated, "Majority shareholders may not use their power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority. Any use to which they put the corporation or their power to control the corporation must benefit all shareholders proportionately and must not conflict with the proper conduct of the corporation's business." (*Id.* at p. 108.) There is no justification for imposing a lesser burden on majority shareholders in connection with a merger.

If a minority shareholder were confined to appraisal when he claimed that the undervaluation of his shares resulted from the breach of fiduciary duty by corporate insiders, the wrongdoers would go unpunished, for only the corporation would be liable for the fair market value of the shares. Exemplary damages would not be available, and there would be no deterrent to individual misconduct, since the corporation would be liable for the fair value of the shares no matter what the cause of their undervaluation.[19]

Defendants urge that if we were to accept plaintiff's position we would be condoning dilatory conduct by minority shareholders which would raise a serious obstacle to legitimate mergers. They point out that in the present case Comsat demanded to rely on the price negotiated in the merger agreement, and to that end the agreement for a total acquisition price of $56 million provided that if shareholders owning more than 10 percent of Amplica stock sought appraisal rights, the merger would be aborted. Plaintiff accepted the $675 paid for his 50 shares without dissent, and waited until after the merger was completed before filing this action. Since the liabilities of the merging corporations in an action for damages may not be settled for years following the merger, claim defendants, the "ability to lever this uncertainty and risk into a large settlement is even greater than the pretransaction strike suit which was the . . . catalyst" for section 1312(a).

We agree that this is a persuasive argument in a case in which the plaintiff was aware of the facts underlying his claim of breach of fiduciary duty prior to the merger but refrained from filing the action for damages until after the merger was completed. The defendant can in such a situation plead the affirmative defense of laches, and if that defense is upheld, the action would be barred.[20] But it does not necessarily justify a holding that even if the

---

[19]This argument would lose much of its force if, as one of defendants' attorneys suggested at oral argument, a shareholders' derivative suit would lie against those whose misconduct caused the underevaluation. We do not express an opinion as to the propriety of such an action.

[20]Defendants pleaded laches as an affirmative defense in their answers. The trial court did not address itself to this defense because it granted summary judgment on other grounds.

minority shareholder is not guilty of laches or if he brings suit before the merger is completed, section 1312(a) nevertheless prevents him from bringing an action for damages for breach of fiduciary duty.

The parties cite numerous authorities in support of their respective positions, but in California only *Sturgeon* is directly in point. In holding that an action for damages was barred by section 1312(a), the court in that case relied primarily on three California cases. (*Beechwood Securities Corp.* v. *Associated Oil Co.*, *supra*, 104 F.2d 537; *Jackson* v. *Maguire* (1969) 269 Cal.App.2d 120, 131 [75 Cal.Rptr. 16]; *Giannini Controls Corp.* v. *Superior Court* (1966) 240 Cal.App.2d 142, 154 [49 Cal.Rptr. 643].) But none of these involved actions for damages for fraud or breach of fiduciary duty in connection with a merger, and almost all the language relating to "exclusivity" of appraisal refers to appraisal as an alternative to equitable relief rather than damages.[21]

Both plaintiff and defendants rely on *Jones* v. *Ahmanson & Co.*, *supra*, 1 Cal.3d 93, a decision which, as we have seen, forcefully affirmed the fiduciary duties owed by majority shareholders to the minority. Although the opinion declares (at pp. 116-117) that corporate changes such as mergers are accompanied by the safeguard of appraisal to protect the minority, it does not discuss the question whether that remedy is exclusive of all other remedies. Nor does it hold that the minority shareholder plaintiff there was entitled to exemplary damages because of the alleged breach of fiduciary duties by the majority, but only that she was entitled to the same opportunity to exchange her shares as the majority enjoyed.

Numerous cases from other jurisdictions relating to the problem at hand are only of marginal assistance. It is difficult to discern any consistent pattern among these decisions. Some base their holdings that appraisal is

---

[21]*Beechwood* was an action to set aside a merger for fraud and breach of duty by directors and shareholders. An order dismissing the complaint was affirmed on the ground that section 369, subdivision (17), of the Civil Code, a predecessor to section 1312(a), confined dissenting shareholders to appraisal. The court noted that the parties assumed that appraisal was the exclusive remedy under the statute, and it held that the plaintiff's argument to the contrary on appeal was barred by laches.

*Giannini* was an action against the Commissioner of Corporations, who had refused to grant a certificate stating that no permit to issue securities was required in connection with a merger. The court held that appraisal was "exclusive of other legal and equitable remedies by which minority shareholders might seek to enjoin or attack" a merger. It stated also that the purpose of the appraisal statute was to protect the "'majority against strike suits by abrogating equitable remedies by way of injunction or rescission to litigate charges of fraud or unfairness, which may be used to extort a settlement by obstruction of a transaction duly authorized.'" (240 Cal.App.2d at p. 154.)

*Jackson* was an action for additional compensation by shareholders following a corporate reorganization. The opinion summarizes the words of the appraisal statute and states in dictum that the remedy provided by it is "exclusive," relying on *Giannini*.

not the exclusive remedy as to a minority shareholder who alleges wrongdoing on the language of the state's statute (e.g., *Pellman* v. *Cinerama, Inc.* (S.D.N.Y. 1980) 503 F.Supp. 107, 110); others reach the same result even without a statute expressly making such an exception (e.g., *Twenty-Seven Trust* v. *Realty Growth Investors* (D.Md. 1982) 533 F.Supp. 1028, 1036); while still others hold that appraisal is exclusive if the plaintiff was aware of the breach of fiduciary duty before approval of the merger (e.g., *Matteson* v. *Ziebarth* (1952) 40 Wn.2d 286 [242 P.2d 1025, 1033]).

The weight of authority appears to favor plaintiff's position because most jurisdictions do not confine a shareholder to appraisal in the absence of an express statutory provision to that effect. (*Twenty-Seven Trust* v. *Realty Growth Investors, supra,* 533 F.Supp. at p. 1036.) However, two factors detract from the force of these cases as authority. With one exception (Colo.Rev.Stats. § 7-4-123(4))[22] we are aware of no other jurisdiction which has a statute similar to section 1312(a). Second, none of the cases we have examined which hold appraisal not to be the exclusive remedy involved a minority shareholder who sought exemplary damages, as does plaintiff in the present case. The plaintiffs in those cases prayed either for the value their shares would have realized absent the breach of fiduciary duty (e.g., *Mullen* v. *Academy Life Ins. Co.* (8th Cir. 1983) 705 F.2d 971)—a remedy which would be available under our statute by way of appraisal—or sought to enjoin or unwind a merger (e.g., *Berkowitz* v. *Power/Mate Corporation* (1975) 135 N.J.Super. 36 [342 A.2d 566]) a remedy prohibited by section 1312(a).

■ Plaintiff makes an additional point which relates not to the language of section 1312(a) but to section 415 which, he claims, "acts as a gloss" on section 1312(a) and preserves the right of a shareholder to remedy fraud or breach of fiduciary duty in connection with a merger. Section 415 provides in part, "Nothing in this division [division 1 of the General Corporation Law, which includes section 1312(a)] shall be construed as a derogation of any rights or remedies which any . . . shareholder may have against any . . . shareholder, director, officer or the corporation because of participation in any fraud or illegality practiced upon such . . . shareholder . . . in connection with the issue or sale of shares. . . ."

Plaintiff insists that section 415 applies because the misconduct alleged in his complaint occurred "in connection with the . . . sale of shares. . . ." But even if this were so, plaintiff would not prevail.

---

[22]There appear to be no cases in Colorado interpreting the appraisal statute in connection with the point of interest here.

The basic problem with his argument is that it proves too much. Section 1312(a) was clearly intended to provide some limitation on the right of a minority shareholder to legal and equitable relief. If plaintiff's theory were accepted, a minority shareholder could, by alleging that "illegality . . . [was] practiced" in connection with a merger, seek to set aside or rescind it or sue for damages. This construction would be contrary to the objectives sought to be achieved by the appraisal statutes, to the express terms of section 1312(a), and to our determination that the section prohibits an action for damages based on the fact that a merger has taken place. We decide, therefore, that section 415 was not intended by the Legislature to apply to the remedies of a minority shareholder in connection with a merger, and that the appraisal statutes, including section 1312(a), govern those rights.

The resolution of the problem in this case requires balancing the need to deter misconduct by corporate insiders against the risk that desirable corporate changes will be hampered by minority stockholders who seek to "exercise leverage for [their] own aggrandizement." (Ballantine & Sterling, *Upsetting Mergers and Consolidations, supra,* 27 Cal.L.Rev. 644, 660.) We conclude that at least in a case such as this, where the plaintiff was aware of all the facts leading to his cause of action for alleged misconduct in connection with the terms of the merger prior to the time the merger was consummated but deliberately opted to sue for damages instead of seeking appraisal, section 1312(a) acts as a bar.

The Court of Appeal also determined that plaintiff does not come within the exception to appraisal contained in section 1312, subdivision (b). That section provides that if the merging corporations are under common control or one controls the other, section 1312(a) is not applicable. (See fn. 16, *ante,* at p. 1208.) The trial court found against plaintiff on the issue of common control, and the Court of Appeal upheld the finding. Since plaintiff does not raise the issue in this court, we concur in the decision below in this regard.

The judgment of the Court of Appeal is affirmed.

Broussard, J., Lucas, J., and Panelli, J., concurred.

**BIRD, C. J.,** Dissenting.—To relegate minority and dissenting shareholders to the statutory appraisal remedy as the majority suggest would strike a forceful blow against this state's strong public policy of protecting the investing public from frauds and deceptions committed in securities transactions. Moreover, such a limited remedy cannot fairly and adequately compensate those individuals who have been damaged in a corporate merger or reorganization.

Recent events have demonstrated with particularity the timeliness and significance of these issues. In the past five years, there has been an exponential rise in merger and acquisition activity. (See, e.g., *Surge of Corporate Mergers Causing Concern on Wall Street,* N.Y. Times (July 3, 1984) at p. 1; *Merger and Acquisition Frenzy to Subside After Record Activity in 1985, Experts Say,* Wall St. J. (Jan. 2, 1986) at p. 6B.) Concomitant with the increasing incidence of corporate takeovers there has been an increase in the number of opportunities for corporate fiduciaries to secure substantial and disproportionate benefits for themselves at the expense of minority shareholders.

The present case provides a disturbing illustration of how corporate directors and officers can utilize the merger process to achieve personal gain without regard to the resulting harm to dissenting shareholders. I write separately to underscore the importance of providing effective remedies to redress this problem and to reaffirm California's and this court's longstanding policy of protecting the investing public from fraud and deception.

Corporations Code section 1312, subdivision (a) sets forth the rules regarding actions challenging the validity of a reorganization or merger.[1] As the majority admit, the language of section 1312(a) does *not* expressly preclude an action for fraud and breach of fiduciary duty; the bar is restricted to actions that challenge the *validity* of the merger or seek to rescind it. (See maj. opn., *ante,* at p. 1207.)

Despite this ambiguity, the majority conclude that section 1312(a) constitutes a bar to petitioner's damage action. Since petitioner's prayer for relief does not include a request for the rescission of the merger (nor does it attack the merger on any other grounds, i.e., antitrust violations, etc.), the majority can reach this result only by mischaracterizing petitioner's claims.

The majority state that petitioner seeks "damages which result from the fact that he no longer has an interest in the merged corporation because a merger has been consummated." (See maj. opn., *ante,* at pp. 1205, 1206.) Viewed this way, the conclusion truly must be "unavoidable" that petitioner's claim amounts to an attack on the validity of the merger. (See maj. opn, *ante,* at p. 1206.) In order to reach this conclusion, the majority had

---

[1] Section 1312, subdivision (a) (hereafter section 1312(a)) provides, in pertinent part: "No shareholder of a corporation who has a right under this chapter to demand payment of cash for the shares held by the shareholder shall have any right at law or in equity to attack the validity of the reorganization or short-form merger, or to have (either) set aside or rescinded, except in an action to test whether the number of shares required to authorize or approve the reorganization have been legally voted in favor thereof . . . ."

All future statutory references are to the Corporations Code unless otherwise noted.

to construe petitioner's claims that the prospectus was misleading and that the public offering was done solely for the purpose of attracting a merger partner as an allegation that the merger was illegal or invalid. This interpretation is wholly unfounded.

In reality, petitioner's claim is substantially different. Contrary to the majority's characterization, petitioner contends that he was defrauded from the outset. Prior to the public offering, there was no market for Amplica common stock. The prospectus circulated by Amplica stated that the company would use the proceeds of the offering to expand the plant, purchase equipment, and boost research and development. The prospectus did not reveal that the board of directors of the company had been seeking a merger partner continuously for at least five months before the offering.

Most of the proceeds from the offering were used to repay outstanding debts and to accumulate cash and short-term investments so as to make Amplica a more attractive merger partner. In addition, the officers and directors received substantial financial benefits, including cash bonus opportunities, retirement allowances, and options to purchase stock in the partner to the merger on very favorable terms. Shareholders with Amplica stock did not receive any of these benefits.[2]

The majority's characterization of petitioner's claim as an attack on the validity of the merger provides some insight into the broader theory upon which their opinion is based. As the majority accurately note, the source of the provision proscribing actions seeking to unwind mergers lies in the approach taken in the past to the "problem" of "strike suits." (See maj. opn., *ante,* at p. 1210.)

More than 40 years ago, authorities on corporate law viewed dissenting shareholders as notorious "piratical obstructionists" who would bring "extortionate corporate litigation" in an attempt to "coerce the majority" and "threaten the transaction of legitimate business." (Ballantine & Sterling, *Upsetting Mergers and Consolidations: Alternative Remedies of Dissenting Shareholders in California* (1939) 27 Cal.L.Rev. 644, 649, 651, 658.) The "anachronistic assumptions" that motivated the commentators of that era have long been abandoned. (Buxbaum, *The Dissenter's Appraisal Remedy* (1976) 23 UCLA L.Rev. 1229, 1244 [hereafter *Appraisal Remedy*]; see also

---

[2]The fact that the proxy statement sent to the shareholders before the approval meeting may have revealed some of these facts does not dilute the egregious nature of defendants' conduct. Petitioner's allegations of fraud and breach of fiduciary duty relate to statements made in the prospectus at the time of the public offering of Amplica stock.

Brudney & Chirelstein, *Fair Shares in Corporate Mergers and Takeovers* (1974) 88 Harv. L.Rev. 297 [hereafter *Fair Shares*].) Nevertheless, the majority insist that "the risk that desirable corporate changes will be hampered by minority stockholders" is sufficient to outweigh any misconduct on the part of corporate fiduciaries. (See maj. opn., *ante,* at p. 1214.) The specter of a revival of the infamous "strike suit" thus takes precedent over any fraud claims brought by the investing public. (See maj. opn., *ante,* at p. 1211.)

Current events have more than adequately demonstrated that the out-dated portrait painted by the majority no longer applies to the corporate-shareholder relationship. More importantly, the majority's reliance on the potential disruption of the market misses the mark entirely. The question in this case is not whether this court should permit any interference with corporate transactions that are within the scope of actions authorized by the regulations. Even if the form of the transaction does not violate any statute, a serious problem still exists; petitioner has alleged fraud and breach of fiduciary duty from the time of the issuance of the prospectus.

The Supreme Court of Massachusetts recently noted: "The dangers of self-dealing and abuse of fiduciary duty are greatest in freeze-out situations like this merger, where a controlling stockholder and corporate director chooses to eliminate public ownership. It is in these cases that a judge should examine with closest scrutiny the motives and behavior of the controlling stockholder. *A showing of compliance with statutory procedures is an insufficient substitute for the inquiry of the courts when a minority stockholder claims that the corporate action 'will be or is illegal or fraudulent as to him.'"* (*Coggins* v. *New England Patriots Football Club, Inc.* (1986) 397 Mass. 525 [492 N.E.2d 1112, 1117], italics added [fn. omitted].) The *Coggins* court ruled that even where a merger has been accomplished in technical compliance with the applicable statutes, if the possibility of violations of fiduciary duties has been alleged dissenting shareholders should not be limited to the statutory remedy of appraisal.

In fact, the holding of the Massachusetts Supreme Court merely echoes the forceful pronouncement of the principle made by this court 17 years ago, that corporate insiders owe minority shareholders a fiduciary duty which transcends technical compliance with relevant statutes.

In *Jones* v. *H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93 [81 Cal.Rptr. 592, 460 P.2d 464], controlling shareholders of a savings and loan association created another corporation and exchanged their shares in the association for shares in the new corporation. In so doing, the controlling shareholders

eliminated the market for the association shares thereby undercutting the value of the shares held by the minority. The minority shareholders filed a class action alleging that the majority had breached their fiduciary duty to the minority. The trial court sustained the defendants' demurrer to the complaint.

On review, this court reversed, holding that plaintiffs' had a valid cause of action for breach of fiduciary duty. The court noted that fiduciary obligations of directors and majority shareholders are not limited to specific statutory duties: "[D]efendants chose a course of action in which they used their control of the Association to obtain an advantage not made available to all stockholders. They did so without regard to the resulting detriment to the minority stockholders . . . . Such conduct is not consistent with their duty of good faith and inherent fairness to the minority stockholders." (*Ahmanson, supra,* 1 Cal.3d at p. 114.) In response to the *Ahmanson* defendants' argument that plaintiffs' had suffered no damages, this court emphatically stated that even if the plaintiffs' could have resorted to appraisal, that remedy would be insufficient to compensate them adequately. (*Id.,* at p. 117.)

Over the years, the courts of this state have consistently reaffirmed this policy of ensuring that shareholders are provided with effective remedies to redress corporate wrongdoing. For example, in *Gaillard* v. *Natomas Co.* (1985) 173 Cal.App.3d 410 [219 Cal.Rptr. 74], the Court of Appeal, holding that the involuntary divestment of stock due to a merger does not preclude an individual from filing a derivative suit, concluded that "the imposition of a continuing ownership requirement in this case would lead to the incongruous result of barring a lawsuit which challenges the wrongful acts of management in bringing about the merger, because of the merger itself. *To hold that a merger has the effect of destroying such causes of action would be tantamount to giving free reign to deliberate corporate pilfering by management and then immunizing those responsible from liability by virtue of the merger which they arranged. This would be a grossly inequitable result.*" (*Gaillard, supra,* 173 Cal.App.3d at p. 420, italics added; see also *Remillard Brick Co.* v. *Remillard-Dandini Co.* (1952) 109 Cal.App.2d 405, 418 [241 P.2d 66].)

The majority admit that the weight of decisional authority favors petitioner's position. (Maj. opn., *ante,* at p. 1213.) In fact, all of the cases from other jurisdictions cited by the majority—with the exception of one Washington case decided in 1952—hold that appraisal is not the exclusive remedy available to minority shareholders. (Maj. opn., *ante,* at pp. 1212-1213.)

As the court in *Twenty-Seven Trust* v. *Realty Growth Investors* (D.Md. 1982) 533 F.Supp. 1028 concluded upon examining the many state court decisions on this issue: "The prevailing view among state courts in states having similar appraisal statutes, in the absence of statutory language making such appraisal the dissenting shareholders' exclusive remedy, is that the statutory appraisal proceeding is not the dissenter's exclusive remedy in cases of fraud, illegal purpose or other wrongful conduct . . . ." (*Id.,* at p. 1036, fn. omitted; see also, *Rabkin* v. *Philip A. Hunt Chemical Corp.* (Del.Super. 1985) 498 A.2d 1099, 1104 ["'The appraisal remedy we approve may not be adequate in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved'"].)

Despite the overwhelming authority supporting petitioner's position, the majority nevertheless conclude that the "elaborate procedure for perfecting the right to appraisal" is sufficient to protect the interests of investors. (Maj. opn., *ante,* at p. 1209.) In light of their recognition that both public policy and decisional authority support petitioner's position, it is difficult to understand why they insist on limiting minority shareholders to a remedy which, under the best of circumstances, would not permit them to obtain full compensation for damages suffered.

As several experts have recently noted, the appraisal process *cannot* provide injured shareholders with effective redress in most situations. (See, e.g., *Appraisal Remedy, supra,* 23 UCLA L.Rev. at pp. 1253-1254; *Fair Shares, supra,* 88 Harv.L.Rev. at p. 299.) In fact, according to one commentator, the remedy "where available . . . is exceedingly technical and difficult to use" and the statutory "approach . . . can be understood only as symptomatic of a general effort to lessen the attractiveness of the appraisal procedure." (*Appraisal Remedy, supra,* 23 UCLA L.Rev. at pp. 1236, 1253-1254.)

In order to fully comprehend the inherent limitations of the remedy, a short explication of the process is necessary. Under the current statutory scheme,[3] the shareholder must first dissent from or abstain on the transaction at issue in order to remain eligible to use the appraisal mechanism. Next, provided that proper notice and legal warning were undertaken and that the shares involved are listed or are part of a class for which 5 percent of the shares have sought payment, the shareholder must make a demand for payment in cash no later than the date of the shareholder meeting. This

---

[3]Sections 1300 through 1312 delineate the appraisal process.

demand must contain the shareholder's offer of a selling price. Once it is made, the dissenting shareholder no longer has the option of joining the majority in the exchange offer without the corporation's consent.

These requirements, one commentator concluded, have the "purpose of putting the shareholder to the more stringent obligations of early dissent and . . . demand . . . to give management early warning of the size and cost of impending dissension. It is achieved at substantial procedural (and tactical) cost to the shareholder." (*Appraisal Remedy, supra,* 23 UCLA L.Rev. at p. 1236.)

In many instances, the voting and demand requirements force the shareholder to take an irreversible position before the outcome of the shareholders' vote is known. Moreover, by forcing the shareholder to name a selling price, the statute shifts the "burden of coming forward with a settlement offer on the party (least) likely to be informed as to the underlying values. . . ." (*Id.,* at p. 1238.) This situation is even more problematic than it appears at first glance since the corporation is in a position to *induce* appraisal at a time when shareholders may have little or no capacity to ascertain whether the enterprise is currently worth more than its past record indicates.[4] (See *Fair Shares, supra,* 88 Harv. L.Rev. at p. 306.) Inevitably, the entire process involves a large degree of delay and uncertainty, thereby causing the dissenting shareholder to incur significant expenses which may cut into his recovery.

The inescapable shortcomings of the appraisal process fully support petitioner's position in the present case. The majority pass the buck by reasoning that all shareholders could make similar claims of undervaluation. (Maj. opn., *ante,* at p. 1209.) Even if this were so, this court should not ignore the fact that where fraud and breach of fiduciary duty are alleged, the problems with this remedy are considerably more egregious. "[A]ppraisal is merely an option-out alternative, and as such it focuses on the premerger value of the acquired company's shares. In short, it neither serves nor is designed to serve as a remedy for the fiduciary misbehavior at which the fairness challenge is directed." (*Fair Shares, supra,* 88 Harv. L.Rev. at p. 307.)

If this court relegates minority and dissenting shareholders to this inadequate remedy, then we will be giving corporate insiders license to commit fraud and gross breaches of their fiduciary duties with impunity. That has

---

[4]The corporation may also be able to conceal anticipated earnings or deliberately depress the market price in order to deceive the shareholder.

never been the policy of this state or this court. It is, indeed, sad to see this court so insensitive to the rights of the state's citizens.

Reynoso, J., and Grodin, J., concurred.

On February 11, 1987, the opinion was modified to read as printed above.